CORNELL UNIVERSITY, *a New York Corporation*, v. JOHN PARKINSON *et al.*

**No. 10634.**

1. ESTOPPEL—*admission in agreed statement of facts upon which judgment has been rendered, cannot, by subsequent proceedings, be retracted to the prejudice of a party who has acted in reliance thereon.* Where a plaintiff brought an action upon a note, whereon there had been interest coupons but which had been detached, and asked judgment upon the principal note without setting up or asking judgment on the coupons, but on the contrary solemnly declared in an agreed statement of facts presented to the court that all the coupons had been paid, and thereupon judgment was rendered and a mortgage given to secure the debt was foreclosed; other parties to the proceeding, who held liens on the mortgaged premises without actual knowledge to the contrary, had a right to presume and to act upon the presumption that the interest coupons had been paid.

2. COURT'S CONTROL OVER ITS JUDGMENTS—*during term, not exercised to permit negligence or misconduct of one party to work wrong to another.* While the court has control of its judgments during the entire term at which they are rendered, the rule should not be construed or applied so as to enable a party to take advantage of his own negligence or misconduct to the injury of other parties who may be wronged thereby.

3. LIS PENDENS—*a mere motion after judgment for leave to file a supplemental pleading is not constructive notice of matter to which it relates.* After a judgment, *lis pendens* applies for

the purpose of enabling the court to enforce the judgment or for other appropriate proceedings based upon the issues on which a judgment was rendered, but it cannot apply to new matters introduced by amended or supplemental pleadings until such pleadings have been filed. A mere motion for leave to file such pleadings does not impart constructive notice of the new issue to which it relates.

4. EVIDENCE EXAMINED—*and held sufficient.* The testimony examined and held to be sufficient to sustain the findings and judgment of the court.

Error from Franklin District Court. A. W. Benson, Judge. Opinion filed May 7, 1898. *Affirmed.*

This was an action by Cornell University to recover $25,000 from John Parkinson and Jefferson Mundy and their wives and to foreclose a mortgage executed by them to secure the payment of said indebtedness. The George R. Barse Live Stock Commission Company and the Merchants' National Bank of Lawrence, Kansas, who held liens upon the mortgaged property, were named as parties defendant, and they subsequently filed answers and cross-petitions setting up their liens. There were coupons attached to the mortgage bond when it was issued, but the plaintiff in its petition did not sue upon any of the coupons, and only asked judgment for the amount of the principal bond, being the sum of $25,000, with interest thereon from maturity. A trial was had on testimony and the following agreed statement of facts :

"It is agreed that Cornell University, plaintiff herein, has a first mortgage upon the premises described in plaintiff's petition ; that there is $25,000 due thereon, with interest from the first day of February, 1894, the rate of interest being in dispute between the parties, the contention being on the part of the plaintiff that the same should be twelve per cent. from the first day of February, 1894, and the defendants that it should draw six per cent. ; that all of the coupon notes have been paid up to the maturity of

said mortgage, and that the principal note matured on the first day of February, 1894, leaving no coupons outstanding or unpaid."

On the testimony and this agreed statement, the court awarded judgment to the plaintiff against Parkinson and Mundy for $26,791.67, and declared the indebtedness a first lien upon the mortgaged premises. A judgment against the same parties was also awarded to the George R. Barse Live Stock Commission Company, in the sum of $22,852.05; and the court decreed that judgment to be a second lien against the mortgaged premises. Judgment was also given in favor of the Merchants' National Bank, for the sum of $25,073.60; and this was declared to be a third lien upon the mortgaged premises. The principal bond on which plaintiff obtained judgment bore interest at the rate of six per cent., but the mortgage provided that, if default was made in the payment of the bond or coupons, they should bear a penalty rate of twelve per cent. from the date thereof until the time the money was actually paid. The court not having allowed the penalty rate, the plaintiff filed a motion for a new trial, alleging that the court erred in computing the rate and in the amount of the allowance. The motion was overruled. Several days afterward, and after the George R. Barse Live Stock Commission Company had purchased the mortgaged property and had assumed to pay the mortgage indebtedness against it, another motion was filed, for leave to set up and recover upon certain coupons which had been formerly attached to the bond and which, it was alleged, were unpaid. A trial was had upon this application, at the end of which the trial court gave, orally, an opinion which, so far as pertinent to the present controversy, was as follows:

"This action was begun on June 19, 1894, when

the original petition was filed.  Various answers were filed thereto, and an amended petition was filed, and at the January term, 1895, I believe, there was another amendment to the petition.  At the April term, 1895, judgment was rendered finding a certain amount due to Cornell University — $26,000 and something over. On the same day, April 10, a motion for a new trial was filed by the University upon the claim that it was denied certain penalties growing out of the default of Mundy and Parkinson.  That motion was overruled, and all the parties left the court.

"On the twelfth of April, 1895, the attorney of the University again appeared and had leave upon his affidavit to set aside the judgment rendered on the tenth of April in favor of the University, and leave to file an amended and supplemental petition to set up certain coupons that were alleged to have been overlooked in the filing of the original petition.

" In the decree rendered on the tenth, a judgment was entered in favor of the George R. Barse Live Stock Commission Company, of Kansas City, and the Merchants' National Bank, of Lawrence, Kansas, for second and third liens respectively on the property, and the judgment of the Barse Company was subject only to the judgment of the University for the twenty-five thousand dollars.

"A motion was made to set aside this order and for leave to the University to set out the additional causes of action.  That motion was overruled, and it was held that the question as to a right to a lien for the additional amount, and the priority of that lien, could only be determined upon pleadings and issues. Consequently, the Barse Company filed its answer to the amended petition, setting out that after the entry of this judgment on April 10, and before it had any notice of any further proceedings, it purchased of

Mundy and Parkinson the property in suit, and agreed with them to satisfy the Cornell University judgment, and upon certain terms and conditions not necessary to mention here, to satisfy the third lien of the Merchants' National Bank, its interest in it being its judgment of about twenty-two thousand dollars; and by this arrangement with Mundy and Parkinson to pay the University lien and the Merchants' Bank lien, it acquired the property in satisfaction of its own lien. That would be the effect of the arrangement. Accordingly, Mundy and Parkinson made a deed to John F. Waite, trustee, reciting these conditions, and thereupon the Barse Company surrendered to Mundy and Parkinson ten thousand dollars of unsecured paper, and accepted the deed and placed it upon record.

"The motion to open this judgment and set up the additional coupons was filed on the twelfth day of April, 1895; the contract by which this transaction was completed was made on the eleventh day of April, and the deed to the Barse Company was acknowledged and recorded on the thirteenth of April. The presumption is that a deed is delivered on the date of the acknowledgment. It would therefore appear, in the absence of any evidence on the subject, that this deed was delivered on the thirteenth day of April, the next day after this motion to open the judgment was filed. The evidence, however, shows that the Barse Company had no actual notice of this proceeding until after the deed was recorded. I believe it was the same day; the deed was recorded at 9:25 in the morning, and the notice was over the telephone about noon of that day.

"Now, with reference to that matter, as I may not think to refer to it again: it seems to me that after a final decree in an action, that whatever may be the doctrine of *lis pendens* in an action of foreclosure to

24—59 KAN.

3. Motion filed after judgment not notice of its contents.

the effect that the cause is still pending for the purpose of enforcing the decree, motions of this kind do not impart notice; that notice is only from pleadings, and not from motions filed after judgment, and I believe it is correct to say, in disposing of this case, that the Barse Company was not chargeable with constructive notice; that it was only chargeable with notice after it was given.

"The reply of the University to the answer of the Barse Company setting out this new arrangement with Mundy and Parkinson on the faith of this judgment and its correctness is, in substance, that the Barse Company had actual notice that these coupons were in existence, outstanding and unpaid, and that having such notice, no estoppel applies. On the part of the Barse Company it is contended that whatever knowledge or information it may have had prior to the entry of this decree, that the conduct of the attorney in the case in taking the judgment, and solemnly declaring here that there was nothing due upon this mortgage except what appeared in the pleadings then filed, was such as it could rest upon in security; whatever information it may have had before that, it would have the right to presume that there was no more due; that although it had some knowledge of the existence of unpaid coupons, or of interest in default, that notwithstanding this, when the attorney of the University came into court and took judgment, and claimed only a certain amount, it had the right to presume, and to act upon that presumption, that whatever interest had been due before that had been paid and adjusted between the parties.

"The contention on the part of the University is that, notwithstanding this pleading that remained on file for nearly a year, and notwithstanding any judg-

ment entered upon it, and all these proceedings, that when the mistake was discovered at the term at which judgment was rendered, it had the right to amend its pleadings to set up the outstanding coupons, and still have a judgment valid as against Mundy and Parkinson, and prior as against the Barse Company.

"On the part of the Barse Company, it is claimed, that having relied upon the record here, first upon the petition, and next upon the judgment, and having by the purchase of the property in the manner suggested altered its situation with reference to incurring the obligation to pay to Cornell University a certain amount, and to the Merchants' Bank a certain amount, upon certain conditions, and having surrendered ten thousand dollars of unsecured paper, it would now work an injustice to reopen this matter and allow the additional coupons to be entered here, and judgment to be entered upon them prior to the judgment of the Barse Company.   This is the question to be decided.

"The first rule to be considered is this : The court has absolute control of its decrees and judgments during the term at which they are rendered ; they are, as expressed by some writers, within the breast of the judge during the term.   This is a wholesome provision of the law, and necessary to the administration of justice.   In the hurry of business, and confusion incident to a term of court, it often becomes necessary to correct during the term the mistakes that have been made, and these can be corrected at any time during the term, and the term is only one day, in law, and persons who purchase property upon decrees must understand that rule, and purchase with reference to it.   That is the first rule to be considered, and upon that rule, I am inclined to think that there is no es-

2. Court's control over its judgments.

toppel of record here; that is, by the mere entry of the judgment, as the judgment does not become final until the term adjourns — final in the sense that it is beyond the control of the court that pronounces the decree. But there is an element in this case that introduces another consideration. There was not only a judgment taken here on the petition, upon a pleading which claimed a certain amount, and only a certain amount, but there was an agreed statement of facts entered into by the parties to this effect: that all the coupons that had originally been attached to this bond had been paid. That was the deliberate and solemn admission of Cornell University, by its attorney in this case, and at its request made a part of the record, and upon that based its right to penalties, and argued upon that proposition. Now it is claimed that whatever may be the effect of the mere filing of the petition and taking judgment by default, where a party enters into a deliberate agreement with all the other parties as to the extent of his claim, and they act upon the faith of it, he ought not afterwards to be heard to say that the statement is not correct. That is not altogether an estoppel of record, but an equitable estoppel. Suppose, for instance, by way of illustration, that looking after its interests as second mortgagees, desiring in some way to secure itself, the Barse Company had gone to Cornell University and asked for a statement of the amount due upon its mortgage, (and indeed it did do that, but the statement was not made then and in response to that request,) but the request had been responded to by a deliberate statement in writing, or not in writing, that all past due interest had been paid, and that the amount due to Cornell University was twenty-five thousand dollars, with interest from

1. Admission in agreed statement of facts cannot be retracted, when.

the date of maturity, and upon that statement the Barse Company had purchased the farm of Mundy and Parkinson and incurred the liability just as they did, it seems to me that that would be a clear case of equitable estoppel. Does it make it any the less an estoppel because the University came into court and made it a matter of record? What is an estoppel? I have here in Anderson's Law Dictionary two or three definitions:

"'Equitable estoppel. Estoppel presupposes error upon one side and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage.' Again: 'The primary ground of the doctrine is, that it would be a fraud to assert what one's previous conduct had denied, when on the faith of that denial others have acted.'

"Perhaps these definitions are as comprehensive as any.

"In *Davis v. Davis* (85 Am. Dec. 159, 26 Cal. 23), the court say: 'Equitable estoppels *in pais* are applied to prevent injury which would ensue to one from the acts or declarations of another were he permitted to gainsay the truth of such acts or declarations.'

"In the case of *Sweezy v. Collins* (40 Iowa 540), the court say: 'A party's ignorance of the truth of the representations made will not remove the estoppel, if his ignorance is the result of gross negligence.'

"It has been held by some authorities, and that was the contention in the case in Iowa, that if the party who made the declaration upon which the other acted was ignorant of the truth, and supposed that he was stating what was the fact, he was not estopped, but if that ignorance was owing to his own negligence, then, manifestly, he must be estopped.

"Concerning that proposition, the court, in *Mark-*

*ham v. O'Connor* (52 Ga. 200), reported in 21 Am.
Rep. 254, say : 'It would be a constructive fraud, a
fraud in law, although the party was innocent.' The
same contention was made in the Georgia case, that
the party who made the admission supposed it was
the truth when he made it, and therefore could not be
estopped. The Georgia court says, that while fraud
is an essential element in estoppel, yet the fraud may
be constructive as well as actual, and it is constructive
fraud where one states that which is untrue and in-
duces another to act upon the faith of it, although he
does not know it is untrue. 'If he is guilty of any
negligence, it would be a constructive fraud, a fraud
in law, although the party was innocent. The re-
quest, therefore, was calculated to mislead the jury.
The true doctrine was put in the charge as given.
Markham, under the circumstances as supposed, would
be estopped, not because he was guilty of an intended
fraud at the time of the act, but because it would be a
fraud, if acting as he did, he should *now* have the
benefit of the mortgage, assuming that the announce-
ment was made, as some of the witnesses say, that the
property was sold clear and free from all incumbrances.
We think it was Mr. Markham's duty, if he intended
to insist on his mortgage, to let the truth be known,
either at the bidding, or to notify the purchaser before
the title was made, or the notes given, or the money
paid. If he failed to do any of these things, that he
was guilty of a fraud in doing so. But the law in our
judgment is, that if he failed, as stated, it would be
a fraud to set up his mortgage *now;* that he is es-
topped ; that the law holds him to the implied admis-
sion he then made, either that his mortgage was
settled, or that there was some arrangement between
him and Sells by which he would get his money out

of the proceeds of the sale.  He may have intended no wrong at the time.  It is the setting up of his mortgage now that is wrong.'

''Now apply that doctrine to the facts in this case. Mr. Flansburg, of course, did not know when he made this deliberate admission, that there were unpaid coupons; that is clear.  Therefore, there was no actual fraud in his making the statement; there was no fraud at all; but the fraud would occur in permitting him now, or the University for whom he speaks, to set up these coupons after the deliberate statement that they had been paid.  Not that fraud has occurred, but to prevent its occurrence, is the object of estoppel.

''In the Indiana case cited, I think the court went further than it is necessary to go here.  *Gray v. Robinson*, 90 Ind. 534.  There the parties were held estopped by the judgment itself, and the court in its opinion cites Freeman on Judgments (3d. ed.), §§ 66, 74, as follows :

'' ' Generally, such conditions will be imposed as may seem necessary to save the interests of third parties who have acted *bona fide*, and without notice ; but if such conditions are not expressed in the order of the court, they are nevertheless to be considered as made a part of it by force of law.  Amendments will only be permitted in furtherance of justice and on such terms as will protect the interests of third parties acquired for a valuable consideration without notice.'

''This was a case of correction of a judgment made at the same term, if I remember rightly, at which it was entered.

'' I give full force and effect to the rule that the court has absolute control of its decrees, to set them aside, or modify or amend them, at any time during the term ; they are within the absolute control of the court.  But leaving all question of this decree out of the case altogether, we have just this state of affairs.

The Barse Company sent their representatives to Ithaca to ascertain what was due upon the mortgage, and see what arrangement could be made to extend it or take it up, so that they could have the benefit of their second mortgage. They were told — there is some conflict in the testimony, although it is not very important as I view the case — they were told by the treasurer of the University that there was back due interest, and he says he told them the amount. But at the very time he says he told the amount, he wrote a letter to the western agents, Stull Brothers, in which he says he was not able to give the exact amount, so I think he may be mistaken. At all events, there was a discussion about back due interest. I do not think the representative of either party knew the exact amount of that interest. They discussed the matter of extension, and the assumption by the Barse Company and the payment of penalties, and the like, and as the outcome of the interview, the Barse Company was referred to Stull Brothers for a statement of the amount due on this mortgage. Very well. This agent returned home, and Stull Brothers were written to by their principal, Cornell University, and directed to make such statement. They did not make it, but the cause was pending in court, and their attorney came here and gave a statement in the form of a solemn statement of facts. Can it have any less effect because it was made part of the record of the proceedings than it would if they had made it out and handed it to the Barse Company outside of court? I think that under the *facts* of this case, without disputing the proposition that the judgment is within the control of the court during the term, there is an equitable estoppel against the University from setting up these coupons to the prejudice of the Company which has manifestly altered its situation with reference to its securities.

"It may be said that they were not purchasers in good faith, but they are purchasers to this extent: They have in terms assumed the payment of the Cornell University debt, they have assumed it by virtue of the modification attached to the memorandum of agreement between Mundy and Parkinson, the Merchants' Bank and the Barse Company, and they have assumed it in the deed. While the deed is to John F. Waite, trustee, yet he and the Barse Company both say that it was for the Company, and as they accepted that deed with that assumption in it, it seems that it is binding upon them.

"Again, it is undisputed that they surrendered to Mundy and Parkinson ten thousand dollars of their paper. It is suggested in the argument that Mundy and Parkinson were totally insolvent, and that the paper was worthless. That may be so, but there is no proof of that. The only proof suggested is that they have defaulted on the payment of these mortgages. Possibly that may be some evidence of insolvency, but it is not such evidence as ought to be acted upon in finding that ten thousand dollars' worth of their paper is absolutely worthless, and that the party has lost nothing by surrendering it.

"It is contended that this being a court of equity, it can put these parties back where they were, put these notes back in the hands of the Barse Company, and restore each party to the situation in which he was. But there are no issues made upon which that may be done. Courts of equity have great power, but they have not the power to frame issues and then decide them. It would require a new action, or an amendment to the pleadings and a further continuance to settle the question between Mundy and Parkinson and themselves. In other words, their situation is altered, to their prejudice, and that is all that is re-

quired to constitute estoppel against the party whose negligence has caused the difficulty. Negligence is shown either on the part of Cornell University, or of Stull Brothers, or of the Kansas Loan and Trust Company, their predecessors in this agency, and it is difficult for me to tell where the fault is. In fact, after all this evidence, oral and in deposition, and by affidavits on these various hearings, it still remains an uncertainty and undetermined where these coupons were at the time the suit was brought. But the University or its agents somewhere lost track of these coupons and brought this suit in the way they did through their own negligence, and having misled another party to its injury, that party altered its situation, and they should not have the relief they now ask to the prejudice of such other party: Of course they should have relief as far as it is equitable to give it.

"It is argued by Mr. Flansburg, with a great deal of force, that the Barse Company knew all about this unpaid interest. That the Barse Company had some knowledge which would put prudent men upon inquiry, there is no doubt. But that is not the rule. The rule is that where a person has knowledge of facts and circumstances such as would put a prudent man upon inquiry, he is chargeable with such knowledge as the inquiry, if duly prosecuted, would lead to. They had such knowledge, and pursued that inquiry by going to the University itself, then to Stull Brothers, and then by coming into court, and at last, as a result of their inquiry, they had presented to them this statement of facts made a part of the record. It can hardly be said that a party should dispute the solemn admission of his adversary and say, 'You are mistaken.' Suppose they knew the exact amount due some time before? They might, in view of this admission, well suppose that payments had been made.

" My conclusion about this branch of the case is, that the University should have judgment against Mundy and Parkinson for the unpaid coupons and taxes, with interest as provided by the terms of the coupons and the law. It does not make much difference in this case whether they have a lien subject to the lien of the Barse Company and the Merchants' Bank or whether they are denied any lien at all, because this property would be exhausted long before such added claims were paid. But it seems to me that the Barse Company holds the relation of a purchaser of these premises, a purchaser having received a statement of the amount due, and the whole amount due, from the University, and there is no further lien upon the property that passed by that conveyance, and that there should simply be a judgment against Mundy and Parkinson for the additional amount."

Judgment was given in accordance with this opinion, and Cornell University alleges error.

*C. C. Flansburg*, for plaintiff in error.

*Haff & Van Valkenburg* and *Alford & Alford*, for defendants in error.

PER CURIAM. We think the main facts in the case are fairly stated by the learned trial judge in the foregoing opinion, and that the law was correctly applied.

The sufficiency of the testimony to sustain the findings of fact made by the trial court is challenged. The testimony was voluminous and largely oral, and we think it fairly sustains the material findings made by the court. The rule here is that, " where there is some evidence fairly supporting all the material conclusions of fact, and the motion for a new trial has been overruled, such conclusions will not be disturbed by the Supreme Court, although apparently against

the weight of evidence." *Cheney v. Hovey*, 56 Kan. 637, 44 Pac. 605.

After a careful examination of the record and of the various points made by the plaintiff in error, we are satisfied that a correct and just result was reached; and therefore the judgment of the District Court will be affirmed.