AMANDA R. CLIFTON V. CHARLES T. MEUSER,
*as Executor, etc.*

No. 15,884.    (100 Pac. 645.)

SYLLABUS BY THE COURT.

1. LIMITATION OF ACTIONS—*Demands against Estates.* Whenever a person desiring to establish a demand against an estate delivers to the administrator a written notice containing a copy of the instrument or account on which it is founded, and stating that he will present it for allowance to the probate court at a time named, an action on the claim is deemed to be begun so as to stop the running of the statute of limitation. It is not necessary that the controversy shall be decided or that it shall be submitted for decision before the expiration of the period of limitation, or even that the day first set for a hearing shall fall within that period.

2. EVIDENCE—*Transactions Had with Deceased Persons.* Under the rule forbidding a party in an action against an administrator to testify in his own behalf in respect to any transaction had personally with the decedent such party may not testify to his own conduct if in so doing he necessarily attributes to the decedent some act or attitude with respect thereto; he may not testify that he rendered services of such a character that if they were performed at all it must have been with the acquiescence of the decedent.

3. —————— *Same.* In an action against an administrator for services in nursing, caring for and boarding the decedent the plaintiff is an incompetent witness to prove the fact of their performance, unless the circumstances are shown to have been such that acquiescence by the decedent is not inferable therefrom.

Error from Miami district court; WINFIELD H. SHELDON, judge.    Opinion filed March 6, 1909.    Reversed.

*L. S. Harvey,* for plaintiff in error.

*Frank M. Sheridan,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: Sarah E. Potts died December 16, 1903. Two days later Charles T. Meuser qualified as her executor. On December 6, 1906, Amanda R. Clifton served

upon him a notice containing a copy of an account—the last item of which accrued on the day of the testatrix's death—and stating that on December 18, 1906, she would present it for allowance to the probate court. By agreement the date of hearing written in the notice was changed to December 21. On that day the probate court continued the hearing to such time as might be agreed upon by the attorneys. On January 28, 1907, both parties being present, a hearing was had and the claim was allowed. The executor appealed to the district court, where a demurrer to the claimant's evidence was sustained upon the ground that her demand was barred by the statute of limitation. This proceeding is brought to review that ruling.

It will be seen that within three years from the time the debt sought to be collected was created, and within three years from the time the executor was appointed, the claimant served him with a notice showing the character of her demand and fixing a time for its presentation to the probate court for allowance, but this time, at least as finally agreed upon by the parties, was more than three years subsequent to the qualification of the executor. The question involved is, therefore, whether the service of such notice is in itself the equivalent of the commencement of an action, so as to stop the running of the statute of limitation. The statute provides that an account against the estate of a decedent may be "exhibited" by serving the administrator with a notice showing the nature of the claim. (Gen. Stat. 1901, § 2889.) This exhibition, however, accomplishes nothing beyond advising the administrator of the existence of the demand and providing for its classification. It has no effect with respect to the statute of limitation. (*Hanson v. Towle, Adm'r*, 19 Kan. 273, 278; *Collamore v. Wilder*, 19 Kan. 67, 81.) But in the case first cited it was said that sections 91 and 92 of the administrator's act provide for the mode of commen-

cing actions in the probate court to establish claims. These sections read as follow:

"Any person desiring to establish a demand against any estate shall deliver to the executor or administrator a written notice containing a copy of the instrument of writing or account on which it is founded, and stating that he will present the same for allowance to the probate court at a time to be therein named.

"Such notice shall be served on the executor or administrator ten days before the presentation of the account to the court, and may be served by the party, his agent or attorney, or by any competent witness, who shall make affidavit to such service." (Gen. Stat. 1901, §§ 2896, 2897.)

That a compliance with these sections does result in the commencement of an action clearly appears from another section of the act, which reads:

"The probate court shall have jurisdiction to hear and determine all demands against any estate; and a concise entry of the order of allowance shall be made on the record of the court, which shall have the force and effect of a judgment." (Gen. Stat. 1901, § 2892.)

Any ordinary civil action is commenced by the issuance of a summons. (Civ. Code, § 20; Jus. Civ. Code, § 9.) Neither the day fixed for the filing of an answer in a summons issued by the district court nor the day named for the appearance of the defendant in one issued by a justice of the peace affects the matter. In the probate court practice under the sections quoted the notice to the administrator corresponds to the summons in an ordinary action, and by analogy with the procedure therein it must be held that a proceeding for the establishment of a claim against the estate of a decedent is begun whenever such notice has been served. It is not necessary that the controversy shall be decided or that it shall be submitted for decision before the expiration of the three-year period of limitation, or even that the day first set for a hearing shall fall within that period. Decisions might be cited in other jurisdictions seeming to bear upon the question,

42—79 KAN.

either supporting or condemning the view just announced. But in fact they are based upon laws so different from our own as to be of little value as precedents here. It results from the conclusion reached that the demurrer to the evidence should have been overruled.

It is desirable, also, to pass upon another question presented, as it may arise again in the further proceedings. The claimant took the stand in her own behalf and offered to testify that she had nursed and cared for the testatrix in her last illness, and that she had boarded her and had done her washing. This evidence was excluded under the statute (Civ. Code, § 322) forbidding a party in an action against an administrator to testify in his own behalf in respect to any transaction or communication had personally with the decedent. The plaintiff maintains that the testimony offered was not within the prohibition of the statute—that it did not relate to a transaction with the testatrix, but to an independent fact not constituting a part of such a transaction. Professor Wigmore condemns the policy of the statutory rule referred to in vigorous terms. (1 Wig. Ev. § 578.) With the question of expediency, however, we have no concern. The present judicial tendency is undoubtedly to give a liberal construction to statutes removing disqualifications to testify, and a strict construction to those imposing them—to endeavor to protect the rights of parties by requiring evidence from a doubtful source to be given only such weight as the circumstances may seem to justify, rather than by excluding it altogether. But no reasonable interpretation of the language of the statute can render the proffered testimony competent. The decided cases bearing on the subject are not in entire harmony. They are collected in notes to these text statements in volume 30 of the American and English Encyclopædia of Law:

"Since the statutes do not render a party wholly incompetent, when the opposing party is acting in a representative capacity, but merely forbid one party to a

contract or cause of action to testify to personal trans-
actions or communications with the opposing party who
has since died or become incapacitated to testify in his
own behalf, it follows that a party to an action is
competent to testify to any material fact which does
not involve a personal transaction with a decedent or
insane person.   In other words, competency is the rule,
and the surviving party to the transaction may testify
to all material facts within his knowledge, except such
as came to his knowledge through a personal transac-
tion or conversation with the deceased."   (Page 1031.)

"Within the principle just stated concerning inde-
pendent facts, the statutes do not exclude the proof of
facts, not involving personal transactions between the
witness and a person deceased or insane, from which,
by inference, may be found other facts which do in-
volve such transactions.   Accordingly, in an action for
services alleged to have been rendered by the plaintiff
to the decedent, the plaintiff may testify to the fact
that he rendered certain services and the nature there-
of, though it might be inferred therefrom that the de-
cedent promised to pay for the services."   (Page 1034.)

"Under statutes barring witnesses from testifying
as to transactions and communications with a decedent,
testimony of the mere fact that services were rendered
and their nature in some cases has not been regarded as
objectionable; still, testimony of the witness as to the
rendition of particular services for the decedent and
their nature is not of itself sufficient to show that the
decedent knew of or authorized their rendition so as to
render him liable to pay therefor.   In other cases testi-
mony as to the actual rendition of the services and their
nature, where they were of such a character as must
have been rendered in the presence of the decedent and
with the consent, knowledge or request of the decedent,
has been held objectionable as relating to a transaction
or communication with the decedent, as where the serv-
ices were rendered in the presence of the decedent so as
to render him, if alive, a competent witness to rebut
the testimony of the witness.   Even though a witness
is incompetent to testify as to the rendition of services
for the decedent, and their nature, he may testify as to
the circumstances surrounding the decedent from which
might be inferred the nature of the services and their
rendition.   So, also, though a witness can not testify as

to the rendition of services and their nature, when rendered in the presence of the decedent, he may testify to the rendition of services and their nature when the services were not rendered in the presence of the decedent and with his immediate and personal participation, or were not rendered directly to the decedent, and, if the contract on the part of the decedent to pay for the services rendered is established by other evidence, the witness may testify as to the nature and character of the services rendered out of the presence of the decedent." (Page 1037.)

(Other cases are cited in 6 Words & Ph. Jud. Def. pp. 5365, 5366; 8 Words & Ph. Jud. Def. pp. 7061, 7062.)

The solution of the question depends upon the meaning of the word "transaction" as used in this statute. However it may be defined in other connections, here it clearly means an action participated in by the witness and the decedent. A plaintiff in an action against an administrator may ordinarily testify to his own conduct. But whenever his conduct is of such a character that in describing what he did himself he necessarily attributes to the decedent some act or attitude with respect thereto the incident which is the subject of the testimony is shown to relate to a transaction participated in by the two parties, which must be shown, if at all, by other witnesses. In the present case the plaintiff could not have testified that she had boarded Mrs. Potts without at the same time in effect testifying that Mrs. Potts boarded with her. If she in fact nursed and cared for Mrs. Potts it follows as a necessary consequence, at least in the absence of very unusual conditions, that Mrs. Potts voluntarily accepted her services, and by acquiescing in their rendition became a party to the transaction. Doubtless the plaintiff might in response to a proper question have been permitted to tell what washing she had done, so long as Mrs. Potts was not personally brought into the transaction; but the inquiry made on this subject seemed to assume that whatever was done in this regard was for her. We con-

clude that no error was committed in sustaining the objection made to the testimony.

The judgment is reversed, and the case remanded for further proceedings in accordance herewith.