GRACE DILLON et al., *Appellees,* v. MATTHEW GRAY, as
an Individual and as Executor, etc., et al., *Appellants,*
and MARION DILLON, *Appellee.*.

No. 17,622.

SYLLABUS BY THE COURT.

1. CONTRACT—*To Care for Parents—Consideration—Specific Per-
formance.* Upon sufficient evidence the court found that the
owner of a farm, with the consent of his wife, made a written
contract with their daughter and her husband, the plaintiffs,
by which plaintiffs were to live with them on the farm and
care for them as long as they lived, in consideration of which
all their property was at their death to become the property
of plaintiffs; that for more than ten years plaintiffs fairly
performed their part of the contract and made lasting and
valuable improvements on the land; that afterwards, follow-
ing the death of his wife, the owner of the land sold the farm,
deprived plaintiffs of possession, refused longer to live with
them, remarried, and executed a will leaving his property to
other heirs. In an action for specific performance against his
heirs and the executor of the will, *held,* that no circumstances
or conditions being shown by the findings and the evidence
which would render the enforcement of the contract inequi-
table, a decree will be upheld which fastens a trust in favor
of the plaintiffs upon the fund in the hands of the executor.

2. MARRIAGE—*Wife's Interest in Husband's Real Estate.* Mar-
riage will not constitute the wife a purchaser of an interest
in lands owned or held by the husband. Upon his death the
wife acquires no interest by will or under the statute in any
property to which he held the legal title but which in equity
belonged to others. Under the facts stated in the preceding
paragraph, therefore, the plaintiffs were not required to show
that the second wife, before her marriage, had notice of their
claim under the contract.

3. EVIDENCE—*Transaction with Deceased.* Testimony as to the
receipt of letters which, in the opinion of a witness, were in
the handwriting of deceased, is not incompetent as relating to
a transaction with a deceased person.

4. ——— *Same.* Conceding that other statements of witnesses
as to things done implied assent by the deceased to the doing
thereof, the admission of the testimony is held not preju-
dicial error, the cause having been tried to the court and other
witnesses having testified to substantially the same facts.

9—87 KAN.

Dillon v. Gray.

Appeal from Leavenworth district court. Opinion filed May 11, 1912. Affirmed.

*Frank Doster*, and *A. E. Dempsey*, for the appellants.

*C. P. Rutherford*, *F. B. Dawes*, *R. C. Miller*, and *Lucien Rutherford*, for the appellees.

The opinion of the court was delivered by

PORTER, J.: This is an action for the specific performance of a contract to convey certain real estate formerly owned by Andrew Gray and his wife, which they agreed should at their death become the property of the plaintiffs. The court decreed specific performance and the defendants appeal. The plaintiffs are the daughter and son-in-law of Andrew and Margaret Gray, and in 1896 were living in Birmingham, Ala. Andrew Gray and his wife were then each sixty-nine years of age and were living on their farm in Leavenworth county. Andrew, with his wife's assent, wrote two letters to the plaintiffs, in which he promised that if the plaintiffs would leave Alabama and come and live on the farm and take care of the old people while the latter lived, the farm and everything owned by them should, upon the death of himself and wife, become the property of the plaintiffs. Relying upon this promise, plaintiffs left Alabama, came to Kansas, took charge of the farm, managed and controlled it, made lasting and valuable improvements thereon, and for more than ten years took care of Andrew and Margaret Gray, until the death of Margaret, in 1907. Shortly after her death Andrew sold the farm and notified the plaintiffs to leave. They removed to a comfortable house in the city of Leavenworth, and offered him a home if he would come and live with them. He refused the offer, and a few months later married Maggie Caruthers, a maiden lady of seventy years. He was then seventy-eight years old. About the time of this marriage he made a will, by the terms of which he left to three of his sons all of

Dillon v. Gray.

his property except a bequest of $25 to Mrs. Dillon, plaintiff, and another bequest of $200 to her daughter Marion. Matthew Gray, one of the sons, was named as executor. At the time of Andrew Gray's death, which occurred December 8, 1908, his estate consisted solely of the proceeds of the sale of the farm, amounting at the time of the trial to the sum of $5872.01.

The action was brought against Matthew Gray as executor and trustee, the four sons and the second wife being joined as defendants. The prayer was for specific performance, and a decree declaring a resulting trust in plaintiffs' favor upon the funds in the hands of the executor. The court made findings of fact, including the following: that for a period of more than ten years the plaintiffs substantially and fairly performed all the obligations required of them by the contract; that they were willing to continue to care for and support Andrew Gray; that the only reason they did not continue to do so the few remaining months of his life was his fault in leaving their home; that the care and attention bestowed upon him and Margaret Gray during the time they lived with plaintiffs was reasonably worth the sum of $6500, and that plaintiffs had made lasting and valuable improvements on the farm of the value of $400.

The plaintiffs' evidence showed that the letters, which were the only written memoranda of the contract, were not in existence. Secondary evidence was offered as to their contents. This evidence was competent, and abundantly supports the finding made by the court as to the substance of the letters and that a contract of the terms stated was in fact entered into. The facts in this case are very like those in *Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743. There the only memorandum of the contract was a letter, which was lost, but the contents were proved by a person who had seen and read the letter several years before he testified. In fact, all the contentions presented by the present appeal, save

two, which will be referred to later, are answered in
the Anderson case, and therefore it is not deemed neces-
sary to review the principles upon which equity in cases
of this character will afford relief by declaring a trust
upon the funds in the hands of the personal representa-
tive of a person who dies without performing his part
of a contract to convey by will or otherwise his prop-
erty to another:

"When a definite contract to leave property by will
has been clearly and certainly established, and there has
been performance on the part of the promisee, equity
will grant relief, provided the case is free from objec-
tion on account of inadequacy of consideration and
there are no circumstances or conditions which render
the claim inequitable." (p. 123.)

In that case the plaintiff was found to be entitled to
specific performance, and equity followed the proceeds
of the property as a trust fund in the hands of the
administrator.  Equity in such cases does "what is
equivalent to a specific performance of such an agree-
ment, by compelling those upon whom the legal title
has descended to convey or deliver the property in ac-
cordance with its terms, upon the ground that it is
charged with a trust in the hands of the heir at law,
devisee, personal representative, or purchaser, with
notice of the agreement, as the case may be." (*Bur-
dine v. Burdine*, 98 Va. 515, 519, 36 S. E. 992, 81 Am.
St. Rep. 741; *Bolman et al. v. Overall, Ex'r, et al.*, 80
Ala. 451, 2 South. 624, 60 Am. Rep. 107. See, also,
Pomeroy on Specific Performance of Contracts, 2d ed.,
§ 468.)  In the present case the contract was based
upon an adequate consideration and has been fully exe-
cuted on the part of the plaintiffs.  No circumstances
or conditions are shown which render it inequitable,
and the decree which the court made charging the funds
in the executor's hands with a trust in favor of the
plaintiffs is fully warranted by the evidence and
findings.

There is nothing substantial in the claim that the

Dillon v. Gray.

court erred in permitting the plaintiffs to testify to transactions with the deceased in contravention to the statute. It was proper for Mrs. Dillon to state that they moved to the farm and resided there. The testimony did not relate to any personal transaction with Andrew Gray. (*Griffith v. Robertson,* 73 Kan. 666, 674, 85 Pac. 748; *Heery v. Reed,* 80 Kan. 380, 382, 102 Pac. 846.) The plaintiffs testified to the receipt of the letters addressed to them in Alabama, postmarked in Kansas, and that in their opinion the letters were in the handwriting of Andrew Gray. This was competent. If he had been living he could not have testified that plaintiffs did not receive letters so postmarked, or that in their opinion the handwriting was not his. This is said to be one of the tests as to whether or not the matter is a transaction within the statute. A case exactly in point is *Bryan v. Palmer,* 83 Kan. 298, 111 Pac. 443. To the same effect is *Minnis v. Abrams,* 105 Tenn. 662, 58 S. W. 645, 80 Am. St. Rep. 913.

The only matters testified to which might be held incompetent within the doctrine of *Clifton v. Meuser,* 79 Kan. 655, 100 Pac. 645, were the statement by Mrs. Dillon that her father and mother lived with them, and that she did the washing and other work at the house, and her husband's statement that he took charge of the farm, attended to all the farm work, gathered and sold the crops, and, possibly, his statement that he made certain improvements. In the Meuser case, *supra,* the rule was declared to be that whenever the conduct of the witness "is of such a character that in describing what he did himself he necessarily attributes to the decedent some act or attitude with respect thereto, the incident which is the subject of the testimony is shown to relate to a transaction participated in by the two parties, which must be shown, if at all, by other witnesses." (p. 660.) It was held in that case that the plaintiff could not have testified that she had boarded the deceased without at the same time, in effect, testifying that the deceased boarded with her.

If it be conceded that the foregoing statements necessarily attribute consent or assent on the part of Andrew Gray to the doing of the things testified to by the witnesses, the admission of the testimony can not be regarded as in the least prejudicial to the defendants. The case was tried by the court, and a large number of witnesses testified to substantially the same facts. Many of these witnesses lived in the neighborhood, and appear to have frequently visited at the home of the Dillons during the ten years in which Andrew and Margaret Gray lived with them. William Gray, a son, who resided in Canada, testified that he visited his father and mother, and that they were well cared for by the plaintiffs. He also testified that his father told him of having written the letters and of the agreement by which the Dillons were to have the farm.

Another question remains to be considered. The court made no finding to the effect that Maggie Caruthers Gray had notice of plaintiffs' claim to the property when she married Andrew Gray. Nor was it alleged in the petition that she had such notice. It is claimed that in the absence of such an averment the court erred in overruling a demurrer to the petition; further, that the fact of notice was not within the issues, but if it were, there being no finding of notice to the second wife, the decree was erroneous as to her. The petition alleged that Andrew Gray and Maggie Caruthers entered into an antenuptial agreement, by which she agreed to accept $100 in full settlement of all her interests in his property in the event she survived him. In her answer she denied under oath the making of any such contract. No evidence seems to have been offered upon the question one way or the other. None of the court's findings make any reference to the second marriage or to any claim of the second wife. After the findings were made the defendants filed a request for several additional findings of fact, among them the following:

"That the court find as to whether the defendants or

either of them had, prior to the death of Andrew Gray, any knowledge or notice of the alleged contract, and, if so, which of the defendants had such notice, and when and how such notice was received by them.

"That the court find as to when Andrew Gray married the defendant Maggie Caruthers Gray, and whether she survives him as his widow, and was mentioned in his will."

Error is predicated upon the refusal to make these additional findings. Notice to the wife of plaintiffs' claim was not required in order to bind her. At her husband's death she acquired no interest in property held by him which in equity belonged to others. Her marriage did not make her a purchaser. There was testimony which would have warranted a finding that she had notice of plaintiffs' claim before her marriage, but the court doubtless considered the question immaterial. She was a witness, and testified that she knew the family well, had known Mrs. Dillon since the latter was a child; that after the Dillons came back from Alabama she learned from conversation with Mrs. Dillon that they claimed to have some kind of a contract by which the farm was to be their property; that in reply to her inquiry Mrs. Dillon said they had no papers showing the contract, and that in a conversation, which evidently occurred after the farm had been sold, Mrs. Dillon informed her of their intention to employ attorneys to push their claim. It would not be difficult to suggest cases which might arise where equity would refuse to compel specific performance of a contract of this kind, because of hardships which would result to a wife who had married the promisor without notice of the agreement and who had lived with and cared for the husband under circumstances which would render such a decree inequitable. The cases cited by the defendant illustrate this equitable rule. In the case of *Gall v. Gall*, 71 N. Y. Supr. Ct. 600, where there were children, the issue of the second marriage, the court refused to enforce the agreement, and held it to be

against public policy to do so. In *Owens v. McNally,* 113 Cal. 444, 45 Pac. 710, 33 L. R. A. 369, the enforcement of the contract was refused because of the hardship that would result to the wife who had married after the contract was made and without knowledge thereof. No circumstances or conditions are shown in the present case which would cause a court of equity to hesitate to compel performance of the contract.

There was no error in the action of the court in modifying the decree at the same term at which it was rendered. The judgment was not final until the term adjourned. The court had all the parties before it, and no advantage was taken of either party. (*Cornell University v. Parkinson,* 59 Kan. 365, 53 Pac. 138.)

The judgment is affirmed.