No. 22,057.

*In re* ESTATE OF S. H. HOOVER, Deceased (E. G. HOOVER, *Appellee*, v. THE ESTATE OF S. H. HOOVER, Deceased, *Appellant*).

SYLLABUS BY THE COURT.

1. TRIAL—*Findings—When Conclusive.*  The rule followed, that a general finding made by a trial court determines every controverted question of fact in support of which evidence has been introduced.

2. PROMISSORY NOTE—*Consideration—Evidence—Findings.*  Where there is some evidence to show that a promissory note was given for a valuable consideration, and there is no evidence to show that the note was not so given, the trial court is justified in finding that there was a valid consideration for the note.

3. SAME—*Note Imports a Consideration.*  Under section 2040 of the General Statutes of 1915, a promissory note imports a consideration.

4. SAME—*Fiduciary Relation of Parties.*  The rule followed in the first paragraph of this syllabus is applied to a transaction wherein a fiduciary relation existed between the parties thereto.

5. SAME—*Claim against Estate—Presentation for Allowance—Statute of Limitations.*  A father signed a note, gave it to his son, and named that son as sole executor of his will.  The son was appointed executor of the father's will, but did not report to the probate court that he had a claim against the estate, and did not present his claim for allowance until more than two years after letters of administration had been granted and bond had been given.  The note was not due at the time it was presented, and the administration of the estate had not then, been fully completed.  *Held*, that the claim was not barred by either section 4565 or 4590 of the General Statutes of 1915.

6. SAME—*Claim against Estate—Limitation of Actions.* The failure of an executor of an estate to publish a notice of his appointment does not prevent sections 4565 and 4590 of the General Statutes of 1915 from running against any claim that he has against the estate.

7. TRIAL—*Evidence.* There was no substantial or prejudicial error in admitting or rejecting evidence.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed April 12, 1919. Affirmed.

*Kos Harris, V. Harris, John W. Adams,* and *S. S. Hawks,* all of Wichita, for the appellant.

*S. B. Amidon, D. M. Dale, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: O. D. Kirk was appointed to appear and manage the defense of the estate of Samuel H. Hoover, deceased, against a claim filed by E. G. Hoover, who was sole executor of the will of Samuel H. Hoover. Judgment was rendered in favor of E. G. Hoover, and O. D. Kirk appeals.

Sometime prior to July 11, 1912, Samuel H. Hoover had been the owner of 320 acres of valuable land near Wichita. About that time, or prior thereto, he deeded the land to his children; 160 acres thereof to E. G. Hoover, the claimant in this action, and the remainder to his other children. The deed to E. G. Hoover was dated July 11, 1912, and a note dated on that day, due on or before May 1, 1918, for $16,000, was given by E. G. Hoover to his father, Samuel H. Hoover. That note was secured by a mortgage on eighty acres of the land deeded to E. G. Hoover. On August 17, 1912, Samuel H. Hoover executed a will giving the remainder of his property to his children, E. G. Hoover, W. C. Hoover, Maude Wise, Bird Hoover, and Mabel Fenn, as though he had died intestate. On July 15, 1913, Samuel H. Hoover executed and delivered to E. G. Hoover a note for $16,000 due four years and forty-five days after its date. Concerning that note a witness, who was present at the time it was signed, testified substantially as follows:

"Exhibit 'S' being the note claimed to have been executed by S. H. Hoover to Ed Hoover, was exhibited to the witness, who testified that he had seen the note before. He said: 'I went in the door, came off of

the west porch. Ed was sitting at his desk writing. I asked him if he was making out a note for the money I borrowed. I owed him some money. S. H. Hoover was there in his presence.

"Q. Did he participate in that conversation? A. No.

"Q. Did he afterwards? A. Well, the note, with this piece of paper, was given to S. H. Hoover. Mr. S. H. Hoover took it in his room. When he took it in his room, it was not signed. He came back. He was gone two or three minutes, and said, 'Here, Ed, that will do until I can get to town and fix things.' Then he showed me the note. It was then signed. I saw the signature on it. I know the old gentleman's signature, have seen him sign it. My judgment is it is his signature.

"The witness was then asked:

"Q. State what further was said. A. Well, Mr. Hoover said, 'Here, Ed, this will fix things until I can get to town and fix things better.

"Q. State what he said? A. He told me he was giving Ed the note to offset the $16,000 note and mortgage on the place, which I knew was on the place, personally."

There was evidence to show that, at the request of Samuel H. Hoover, E. G. Hoover had taken charge of the farm in 1900, when it was in a somewhat run-down condition, had cared for it, built it up, and made it pay, and that when he took charge of the farm he was more than twenty-five years old and was a professional baseball player.

1. The court found that "E. G. Hoover should have and recover of and from the estate of S. H. Hoover, deceased, the sum of $17,244.44 with interest at the rate of ten per cent per annum from June 10, 1918." There was a general finding in favor of the claimant. That finding determined every controverted question of fact, on which there was evidence, in favor of the claimant. On evidence from which different persons might have reached different conclusions, that finding resolved those conclusions in favor of the claimant. These principles have been declared so often that it is useless to cite authorities to support them. It is only just to say, however, that O. D. Kirk is not advancing any argument against these principles, but it is necessary to start with them in order to properly determine the questions that are presented.

2. It is argued that, as a gift, the claim is void. Many authorities are cited to show that payment of a promissory note cannot be compelled when it is signed and delivered by the maker as a gift to the payee. It may be conceded that the principle contended for is correct, but the general finding of

the court determined that the note was given for a valid consideration.

Under section 2040 of the General Statutes of 1915, "all contracts in writing, signed by the party bound thereby, or his authorized agent or attorney, shall import a consideration." The note was a contract in writing signed by Samuel H. Hoover and imported a consideration; therefore, the burden was on O. D. Kirk to prove that the note was without consideration. (Gen. Stat. 1915, § 2041.) He did not prove that fact.

The record of the judgment in the probate court was introduced in evidence. That record contained the following recital:

"Thereupon it was stipulated and agreed by and between all of the parties in open court, that the jury should be discharged, and that the only question in controversy was whether or not the demand of the said E. G. Hoover was exhibited within due time, that if the court should find that said demand was exhibited within due time, that then and in that event the court should render judgment in favor of the claimant and against the estate for the full amount of said claim, it being agreed between all of the parties, that if said claim was exhibited within due time, as provided by law, that the same should be allowed against said estate, and that the only question to be determined was by the court as to whether or not the claim of the said E. G. Hoover against said estate had been exhibited within due time as provided by law."

In *C. B. U. P. Rld. Co. v. Shoup*, 28 Kan. 394, the following language is found:

"An oral admission of a fact by an attorney during the trial of a cause binds his client, and such admission may be proved on a subsequent trial of the case. If from the language used at the time, or the surrounding circumstances, it appears that such admission was intended as a mere waiver of proof for the purposes of that trial only, that will be the whole scope of its force; but if it appears to have been intended as a general admission of the fact, it will be as binding as though made upon such subsequent trial; and, where it is uncertain what was the scope and intent of the admission, the matter must be left to the jury for its determination." (syl. ¶ 3.)

The rule there declared is supported by *Crockett v. Gray*, 31 Kan. 346, 2 Pac. 809; *Railway Co. v. Pavey*, 57 Kan. 521, 46 Pac. 967; *Cornell University v. Parkinson*, 59 Kan. 365, 53 Pac. 138; and *Lyon v. Garrett*, 77 Kan. 823, 92 Pac. 859.

Other evidence concerning the consideration for the note

was introduced on the trial. A summary of a part of that evidence has been made.

From the presumption concerning the consideration, from the stipulation, and from other evidence introduced, the court was justified in concluding that there was sufficient consideration for the note.

3. It is argued that it is to be presumed that, when the mortgage note for $16,000 was given, all accounts and financial obligations existing between E. G. Hoover and his father were adjusted, and that, therefore, the $16,000 note given to E. G. Hoover was without consideration and was a gift. The presumption contended for is contrary to the presumption fixed by section 2040 of the General Statutes of 1915, and cannot prevail.

4. Another proposition presented is that where a fiduciary relation exists between a parent and child, and there is a transaction between the two resulting in a benefit to the child, the burden of proof is upon him to show fairness in the entire transaction. The principle contended for may be conceded, but the finding of the court determines the question against O. D. Kirk, and that finding is supported by evidence and must stand.

5. Kirk contends that the claim is barred by sections 4565 and 4590 of the General Statutes of 1915. To properly discuss this contention, it is necessary to state some additional facts disclosed by the evidence. Samuel H. Hoover died on December 4, 1913. E. G. Hoover was appointed executor on December 20, 1913, and gave bond as such executor on that day. He did not publish notice of his appointment until in April, 1917. A report filed by the executor, December 18, 1914, did not list the note in controversy as a demand against the estate. The claim on the note was filed for allowance on July 13, 1916, and was allowed by the probate court on April 18, 1917. At that time the estate had not been fully administered.

Was the claim of E. G. Hoover barred by either of the statutes mentioned? The answer to this question involves the construction of sections 4565, 4568, 4569, 4582, 4590, and 4592 of the General Statutes of 1915. These sections read as follows:

"§ 4565. All demands not thus exhibited within two years shall be forever barred, saving to infants, persons of unsound mind, imprisoned

or absent from the United States, one year after the removal of their disabilities.

"§ 4568. Any person may exhibit his demand against such estate by serving upon the executor or administrator a notice, in writing, stating the nature and amount of his claim, with a copy of the instrument of writing or account upon which the claim is founded, and such claim shall be considered legally exhibited from the time of serving such notice.

"§ 4569. Every executor or administrator shall keep a list of all demands thus exhibited, classing them, and make return thereof to the probate court every year at the term at which he is to make settlement.

"§ 4582. Any executor or administrator may establish a demand against his testator or intestate, by proceeding against his coexecutor or coadministrator in the manner prescribed for other persons; but if there be no coexecutor or coadministrator, he shall file his claim and other papers, and the court shall appoint some suitable person to appear and manage the defense on the part of the estate.

"§ 4590. No executor or administrator, after having given notice of his appointment as provided in this act, shall be held to answer to the suit of any creditor of the deceased unless it be commenced within two years from the time of his giving bond.

"§ 4592. Any creditor of the deceased whose right of action shall not accrue within the said two years after the date of the administration bond, may present his claim to the court from which the letters issued at any time before the estate is fully administered, and if on examination thereof it shall appear to the court that the same is justly due from the estate, it may by consent of that creditor and the executor or administrator, order the same to be discharged in like manner as if due, after discounting interest as mentioned in this article, or the court may order the executor or administrator to retain in his hands sufficient to satisfy the same; or if any of the heirs of the deceased, or devisees, or others interested in the estate, shall offer to give bond to the alleged creditor, with sufficient surety or sureties, for the payment of the demand in case the same shall be proved to be due from the estate, the court may, if it thinks proper, order such bond to be taken instead of ordering the claim to be discharged as aforesaid, or requiring the executor or administrator to retain the assets as aforesaid."

The purpose of section 4568 is to give to the executor or administrator notice of the existence of claims against the estate. When a sole executor or administrator has a claim against the estate, there is no person to whom he can exhibit his demand under this statute, except himself, and he knows of the existence of the claim without any exhibit of demand. The statute cannot apply to the executor under such circumstances, for the reason that he has notice of the existence of the claim, and his serving upon himself a notice in writing of that claim cannot

serve any useful purpose. He would not know any more after the notice had been served than he knew before.

When the claim is filed with the probate court for allowance, a person is appointed to take charge of the defense. That person is not a special administrator. He has no control over the estate; he represents the estate in the lawsuit, and when that is over, his authority ends.

The only effect of the failure of E. G. Hoover to present his claim for allowance was to defer it in classification. If, however, there had been a coexecutor, it would have been Hoover's duty to exhibit his demand to that coexecutor under section 4582, or sections 4565 and 4590 would apply to him, unless those sections are modified by section 4592. That section is an exception to the operation of sections 4565 and 4590. It provides that a creditor whose right of action has not accrued (whose claim is not due) may present that claim to the court for allowance at any time before the estate is fully administered.

Section 4569 does apply to a sole executor as a creditor. He should list his demand and return it to the probate court when he makes his report. His failure to do so may be introduced in evidence against him when he seeks to establish his claim, but such failure will not operate as an estoppel, and will not defeat him when he seeks to procure an allowance of his claim.

E. G. Hoover's claim against the estate of Samuel H. Hoover was not barred by any statute of nonclaim or of limitations.

6. E. G. Hoover argues that sections 4565 and 4590 began to run from the publication of the notice of appointment as executor, but that argument is faulty for the reason announced in *Bauserman v. Charlott*, 46 Kan. 480, 26 Pac. 1051; *Kulp v. Kulp*, 51 Kan. 341, 32 Pac. 1118; and *Brown v. Baxter*, 77 Kan. 97, 94 Pac. 155, 574, where it was held that these statutes run against a creditor who permits the statutory time to elapse without procuring the appointment of a personal representative to whom the creditor's claim may be presented, and against whom it may be allowed. If a creditor cannot stand by and permit the statutory time to elapse, it follows that E. G. Hoover could not stop the running of these statutes by his failure to publish the notice of his appointment.

7. Complaint is made of the admission of evidence, and likewise of the rejection of other evidence. The abstract filed in this court, and the transcript of the evidence introduced on the trial, have been examined, and the court is of the opinion that if any of the evidence admitted was inadmissible, or if any of the evidence rejected should have been admitted, the error was not substantial, nor prejudicial, and does not warrant a reversal of the judgment therefor.

The judgment is affirmed.