No. 31,257.

VIVIAN LAUPHEIMER, *Appellant*, v. L. JAY BUCK and TRACY PRITCHARD, as Executors of the Estate of William Laupheimer, *Appellees*.

(22 P. 2d 949.)

936

I. T. *Richardson* and *Gilbert H. Frith,* both of Emporia, for the appellant.
*W. L. Huggins* and *Humbert Riddle,* both of Emporia, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action against the executors of an estate to recover on *quantum meruit* the reasonable value of services rendered the deceased in his lifetime. It was determined in the trial court upon the motion of the defendants for judgment in their favor upon the pleadings and the stipulated and admitted facts by the sustaining of said motion, and judgment was rendered for the defendants for costs, and plaintiff appeals.

The sole question involved was that of the bar of the one-year nonclaim statute, R. S. 1931 Supp. 22-702, and the one-year statute of limitations, R. S. 1931 Supp. 22-727.

The deceased, for whom the plaintiff claims to have rendered services at his request for nearly three years and for which he verbally promised compensation, died March 6, 1930. The defendants were duly and regularly appointed and qualified as executors on March 15, 1930. No formal claim was ever filed by the plaintiff in the probate court against the estate. This action was commenced in the district court of the county where the estate was being settled, on July 9, 1932, more than two years after the executors were appointed and qualified and had given notice of their appointment and qualification as such.

Appellant, however, relies upon the relation between this action and an intervening one between the same parties involving the recovery of compensation for the same services, in the form of specific real property, as per a verbal agreement before and during the time the services were being rendered by her, this intervening action having been commenced on October 24, 1930, less than eight months after the qualification of the executors. In this former action the plaintiff failed to recover the real property prayed for, and judgment was rendered for defendants for costs. She appealed to this court, and here the judgment was affirmed, the decision being rendered June 4, 1932, and the case being entitled *Laupheimer v. Buck,* reported in 135 Kan. 631, 11 P. 2d 721.

It is the theory of the appellant that the filing of the former ac-

tion within time fully satisfied the requirements of the nonclaim statutes and notified and informed the defendants of the plaintiff's claim of a contract with the deceased and of her claim against the estate for compensation for the reasonable value of the services rendered by her. It is further contended that no further or additional notice was necessary for the same claim for compensation promised; that it is the same claim urged in both actions, only with different remedies, and that this action should on that account relate back to the filing of the former action.

The stipulation and pleadings show that the allegations of plaintiff's petitions in the two actions are almost identical down to that of the promised compensation. In the former petition the alleged promise was certain real estate owned by the deceased, and in this action she claims to be entitled to recover for such services so rendered the fair and reasonable value of the same.

Appellant insists that by bringing the first action in time, she has fully complied with the requirements of R. S. 22-704, which is as follows:

"All actions commenced against such executor or administrator after the death of the deceased shall be considered demands legally exhibited against such estate from the time of serving the original process on such executor or administrator."

She further claims that the bringing of such action will take the place of filing a claim with the probate court, referring to decisions to that effect. Appellant cites *Clifton v. Meuser*, 79 Kan. 655, 100 Pac. 645, where the claimant for similar services rendered the deceased, as in this case, served on the executor a notice of such claim only a few days before the expiration of the limitation and set the time for hearing on the last day within the limit. The hearing was continued so that the hearing was not had until the limitation had expired, and it was held that it was not necessary that the controversy be decided before the expiration of the period of limitation. Other cases are cited along the same line, but we do not think the propositions there determined exactly reach and control the situation here involved.

Appellant cites the case of *Hoover v. Hoover's Estate*, 104 Kan. 635, 180 Pac. 275, where the executor was very tardy about qualifying as such and beyond the proper time filed his own claim against the estate, and it was held that as he was the sole executor and, of

course, knew of his own claim, the statute of limitations did not apply, as the only purpose of the notice of claim was to inform the executor. Appellant reasons from this ruling that the first action fully informed the executors in the case at bar of the plaintiff's claim against the estate. But the difficulty is not limited to the information furnished by the first action; it is in the difference of the causes of action or the kind of claims. The distinction between such claims is well pointed out in the syllabus of *Clifton v. Meuser,* 88 Kan. 408, 129 Pac. 159.

"Where one who has received money from another contends that it was given him under an express contract, in consideration of services which he afterwards performed, but is defeated in that contention in an action brought against him for the recovery of the money, he is not thereby precluded from maintaining an action upon an implied promise to pay the reasonable value of such services as he had rendered." (Syl. See, also, *Faler v. Culver,* 94 Kan. 123, 146 Pac. 333; and *Darnell v. Haines,* 119 Kan. 633, 240 Pac. 583.)

In the case of *A. T. & S. F. Rld. Co. v. Schroeder,* 56 Kan. 731, 44 Pac. 1093, an injured workman on the railroad commenced his action against the railroad to recover damages for personal injuries caused by the negligence of the company, and more than two years later amended his petition to contain an additional cause of action concerning the same injury on account of the negligence of a fellow servant. The amendment was held to be a new cause of action and barred by the statute of limitations.

In *Railway Co. v. Bagley,* 65 Kan. 188, 69 Pac. 189, a party commenced two suits upon a single cause of action, and it was held that where the one first determined stated no cause of action it will not arrest the running of the statute against an amendment made in either after the bar of the statute.

"In an action for a commission a real-estate broker may join a count for the reasonable value of his services with a count based upon an express contract to pay a stated commission." (*Berry v. Craig,* 76 Kan. 345, syl., 91 Pac. 913.)

The claims of the plaintiff in the two actions here being considered are entirely different, although they might properly be included in the same petition, but recovery could only be obtained upon one. If both had been in the same petition and one of them was later amended, that cause would be barred regardless of the other being permitted to stand.

"When a petition fails to state a cause of action, an amendment which as-

| | | "Per cent, approx. | | Per cent, approx. |
|---|---|---|---|---|
| NeSmith (D) | 192 | 40 | 96 | 46 |
| Sargent (R) | 290 | 60 | 114 | 54 |
| McCormick (D) | 199 | 41 | 91 | 44 |
| Almond (R) | 286 | 59 | 115 | 56 |
| Pierpont (D) | 309 | 67 | 125 | 61½ |
| Wightman (R) | 154 | 33 | 78 | 38½" |

It will be seen that the ratio of votes between the two boards for this office is about the same, while for the office of county attorney, as has been seen, there is a marked difference. After the sacks in which ballots were kept had been identified and the officer in charge of these had testified that they had been in his continuous custody and had not been tampered with the ballots were offered in evidence. The contestee objected to this offer on the ground that there had been no showing made to overcome the *prima facie* presumption of the correctness of the returns made by the canvassing board. The contest court sustained this objection. It held as follows:

"Wherefore, it is the ruling of the court that the demand for the recount of the ballots of the ninth precinct of the third ward has not been supported by testimony to show that any sufficient irregularity took place in the matter of the reception or tallying of these ballots to warrant a recount.

"That it is, in the judgment of the court, a mere supposition that the ballots themselves will show a variance of count from the recorded result as termed by the judges of the election precinct and canvassed by the county commissioners.

"It is the further judgment of this contest court that it has no right to open this or any other individual ballot box on the mere asking without a proper basis therefor, and competent and sufficient evidence that a mistake has occurred or an irregularity perpetrated either willfully or accidentally that would affect the result of the final count."

The contester then offered the ballots of all the precincts in Sedgwick county. The introduction of these ballots was objected to and sustained on the same ground.

The contester then rested his case. The contestee then demurred to the evidence of contester on the ground that it failed to show any cause of action in favor of the contester, that the evidence was insufficient to show any mistake in the count, and for the further reason that the evidence did not show a probability that a recount of the ballots would decide the contest in favor of the contester. The contester also moved for judgment. The demurrer and motion for judgment were sustained and a motion for a new trial was denied.

The contester appealed to the district court. The four district

judges of the county seat sat *en banc* and heard the appeal. The contester argued before the district court and urges here that the district court could sit as a trial court and make new findings of fact and conclusions of law. However, since no new evidence was tendered in district court and the hearing there was on the record made before the contest court, that court properly treated the matter as though it were an appellate court.

The case then presents two questions, as follows: Was there sufficient evidence presented to overcome the *prima facie* presumption of the regularity of the return of the election officials; and must the contester first make a showing sufficient to overcome the presumption of correctness of the official returns in order to be entitled to have the ballots counted? We will notice the latter question first.

The contester bases his right to count the ballots on the provisions of R. S. 25-419. The particular part upon which he relies reads as follows:

"In all cases of contested elections, either of the parties contesting shall have the right to have such ballots opened and to have all errors of the judges in counting the ballots corrected by the court or body trying such contest."

This section should be considered in connection with R. S. 25-1411, and in particular the first and sixth subdivisions thereof, as follows:

"The election of any person declared duly elected to any county office may be contested by any elector of the county—

serts a cause of action barred by the statute of limitations does not relate back to the first petition so as to deprive defendant of the defense of the statute." (*Powers v. Lumber Co.,* 75 Kan. 687, syl. ¶ 1, 90 Pac. 254.)

The bar relates to the commencement of the cause of action with each separately, and as this action was not commenced until long after the bar of the statute had run, the ruling of the trial court was correct in not permitting it to be related back to the time of the commencement of the former action.

The judgment is affirmed.