JOHN B. LAVELLE, ET AL., Appellants, v. PATRICK LAVELLE, ET AL., Appellees.

Conveyances: CONSIDERATION. A conveyance of land reciting a con-
1 sideration in hand paid, and fully executed, cannot be set aside for want of consideration.

Same: CONFIDENTIAL RELATION: BURDEN OF PROOF: UNDUE INFLUENCE.
2 Where the evidence that a mother, though of advanced age but able to look after her own affairs, conveyed to her son the farm on which they lived, reserving the life use of part of the house, and he gave her back a life lease providing for a certain rental, he to pay all taxes, there was no such showing of a confidential relation between them as would shift the burden to the son of proving that the transaction was fair and free from fraud. Nor was there any such evidence of undue influence as would avoid the conveyance.

*Appeal from Sioux District Court.*—Hon. Wm. Hutchinson, Judge.

Tuesday, February 17, 1914.

Suit in equity to set aside a conveyance of land, made by Mary Lavelle during her lifetime to the defendant, Patrick Lavelle, on the 8th day of September, 1908, upon the ground of the mental incompetency of the grantor, and by reason of fraud and undue influence. A partition was also asked, and an accounting for the rents and profits. The answer admitted the conveyance, but denied the other allegations. Upon a trial to the court there was a finding for the defendants, and a decree was entered, dismissing the petition, at plaintiffs' costs, and plaintiffs appeal.—*Affirmed.*

*George T. Hatley* and *Anthony Te Paske,* for appellants.

*Fitzpatrick & Frantzen,* and *Van Oosterhout & Hospers,* for appellees.

Deemer, J.—Plaintiffs and defendants, aside from two women, who are the wives of some of the parties, are the children and grandchildren of Mary Lavelle, who departed this life November 28, 1911, at the age of eighty years. She was married to Patrick Lavelle in Ohio in the year 1861, and came with him to Iowa in the year 1876. During that year they purchased eighty acres of the land in controversy, lying in Sioux county, and title was taken in the name of the husband. Thereafter they acquired two hundred and forty more acres, and the title to all of it was finally put in the name of the wife, Mary. It is suggested that the title was taken in her name to avoid certain judgments which stood against her husband. They lived upon the land until the year 1900, when they moved to the town of Maurice, where they lived until about the year 1902, when they moved to the town of Struble, and lived there until the husband's death, in the year 1904. Upon his death the widow moved back to the farm, which was then being cultivated and used by two sons, Patrick and John,

and occupied four upstairs rooms in the house on the land, doing her own cooking, and caring for the rooms herself, until she died, in the year 1911. The son John married, and left the farm in the year 1905; but Patrick continued to remain thereon under a lease from his mother down to the time of the making of the deed in question. Just prior to the death of her husband she made a will in which she gave him a life estate in the land, $500 to a daughter, Kate Sullivan, $1 to each of her grandchildren, and divided the remainder equally between her sons John and Patrick. In the year 1907 she sold one hundred and sixty acres of the land, which was covered by mortgage, to a stranger, and made a deed to him in March, 1908; the remaining one hundred and sixty she conveyed to her son Patrick September 8, 1908. The conveyance was by warranty deed; but the son gave her back a life lease, providing for a rental of $360 per annum, he to pay the taxes, and the deed reserved to the widow the use of certain upstairs rooms in the house during her life. On the same day she executed a new will, disposing of the remainder of her estate—giving one share thereof to her son John, another to her daughter Kate, and another third to her grandchildren, the surviving heirs of a deceased daughter who married a man by the name of Hannon.

At that time she had, in addition to the land, some household goods and about $6,000 in cash. Her only living children were John B. and Patrick Lavelle and Kate Sullivan. The farm was worth at this time about $16,000. It is claimed that, at the time of the making of the conveyance and of the will, Mrs. Lavelle was suffering from arterial sclerosis and heart lesion, and was mentally incompetent to transact business, that the deed was procured from her, without consideration, by fraud and undue influence, and that it should be set aside. No present attack is made upon the will.

Two propositions are relied upon for a reversal: First, it is said that the testimony shows such mental incapacity

of the grantor, Mrs. Lavelle, that the deed should be set aside; and, second, that Patrick, her son, occupied a confidential relation toward her,

1. CONVEYANCES: consideration.

and that the burden is upon him to show that the deed was fair, free from fraud and undue influence. It is also suggested that, as the deed was without consideration, it may be set aside on this ground alone; but this is manifestly an incorrect proposition. The deed had a consideration. But, if this were not true, it recites one as in hand paid, and, as it was fully executed, it cannot be set aside for want of consideration. This is fundamental law, for which no authorities need be cited.

The first proposition is wholly and solely a fact question, and the second is also bottomed upon a fact, to wit, did the grantee occupy a fiduciary or confidential relation toward his mother? If he did, then the rule of law contended for by appellants applies; but there would still remain a fact question for determination, i. e., Was the deed fair, and was it fully explained to, and understood by, the the grantor, and was it free from fraud, misrepresentation, deceit, or overreaching? So that at the bottom of this controversy are the questions of fact suggested. Upon these the trial court evidently found with the defendants, and we are asked to reverse these findings.

We have carefully gone over the testimony relating to Mrs. Lavelle's condition of mind at the time she made the deed in question, and executed her last will, and fail to find enough of it to justify a finding of mental incompetency at that time. Practically every circumstance relied upon as occurring prior to execution of the deed is easily explainable, and no one, it seems, questioned her competency to transact business down until near the time of her death. In fact she did transact her own business with seeming judgment and discretion during the years 1908, 1909, and 1910, and on until shortly before the time of her death, and often did business with some of

the witnesses who now claim that they saw evidence of mental defects.

We are satisfied that, but for the fact that some of the heirs now think she did not make an entirely equitable distribution of her property by her deed and will, we should never have heard of this case. Taking all the facts, there is nothing in the method of distribution, or in the distribution itself, which, standing alone, indicates any particular inequalities, or such as any rational person might not well have made, and, aside from this, the facts relied upon to show insanity prior to the date of the deed and will are trivial in character. She may, and doubtless at the time of her death did, have arterio sclerosis; but at that time she was eighty years of age, and it is now general knowledge that "a man is as old as his arteries." During the last few years of her life, this may have affected her mind to a degree; but there is nothing in the record to indicate such a case of *senile dementia* as to make it probable that her mind was at all diseased at the time she made the deed in question.

It would be without profit to set out the testimony in detail; indeed, some of it relied upon by plaintiffs, some of it from heirs, or devisees, under the will, was incompetent, and should not be considered. *In re Goldthorp,* 94 Iowa, 336. Indeed, it so happens, as is generally the case, that this was put in the strongest terms used by any of the witnesses.

II. Coming, now, to the second question, which really involves two propositions, we may say that the record does not show any such confidential and fiduciary relations between grantor and grantee (mother and son) as 2: SAME: confidential relation: burden of proof: undue influence. would justify a holding that the burden of proof is upon the latter of showing that the transaction was free and fair, without fraud, deceit, or undue influence. The son did nothing more, if indeed he did as much, as is usually expected from one occupying the same relations. As a rule the mother looked after her own affairs, and whatever her son did for her was generally

by her express and specific directions. It was her will and judgment which was executed and carried into effect, and not his. The will first executed by her, which was at a time when it is conceded she was sound of mind, indicates her thought at that time, and she did not thereafter select any other objects of her bounty, although to some extent she modified its provisions due, as it appears, from change of circumstances and conditions.

The deed in question, although placed of record and known to all interested parties in the year 1908, was never challenged until after the grantor's death; and then by some of the people who had business transactions with her down until January of the year 1911. There is nothing to show that the grantee of the deed ever made a single suggestion to his mother about making the deed in question. It is true that Mrs. Lavelle asked her son Patrick to take her to town on the day the deed was executed, saying that she wanted to see an attorney on business. The son did this. The mother went to the attorney, and talked with him about disposing of her property. She fully explained to him what she had done for her children, all of which was true. She stated in a general way the amount of her property, and apparently had no fixed design when she went to the attorney's office as to just how she would carry her purposes into execution. The making of the deeds, leases, etc., was suggested by the attorney as a means for accomplishing her purposes, and they were accordingly draughted, read, and signed, the latter taking place in the presence of the grantee soon after the matter was fully explained to him, and the only suggestion he made was that, if the yearly rental for the land to the mother was not enough to take care of her, he would pay more. The mother said the amount was ample for the rental, and this was fixed, and also the reservation in the deed. The testimony of the attorney as to part, at least, of this transaction was competent. *Winters v. Winters*, 102 Iowa, 53; *Barry v. Walker*, 152 Iowa, 156; *Chambers v. Brady*, 100 Iowa, 622.

Nothing in *Denning v. Butcher*, 91 Iowa, 425, relied upon by appellant's counsel, runs counter to this holding.

As plaintiffs' case, in its last analysis, rests primarily upon the proposition that the burden rested upon appellees, we may with propriety here cite, in support of our conclusion that the case does not show such a state of facts as to change the ordinary rule that the burden of proof is upon the party attacking the conveyance, the following cases: *Chidester v. Turnbull*, 117 Iowa, 168; *Brackey v. Brackey*, 151 Iowa, 99; *Mallow v. Walker*, 115 Iowa, 238; *Vannest v. Murphy*, 135 Iowa, 123.

The decree seems to be correct, and it is *Affirmed.*

LADD, C. J., and WITHROW and GAYNOR, JJ., concurring.