SPENCER S. CHAMBERLIN, Appellee, *vs.* CHARLES H. SANDERS *et al.* Appellants.

*Opinion filed April 22, 1915.*

1. DEEDS—*when a contract and deed made in consideration of furnishing a home will not be set aside.* A contract and deed based upon an agreement by the grantee to furnish the grantor with a home will be rescinded and set aside in equity only when such facts are shown as will warrant the presumption that the contract was entered into and the deed procured with fraudulent intent on the part of the grantee not to carry out the contract.

2. SAME—*what does not justify presumption that grantee did not intend to carry out contract.* A presumption that the grantee did not intend to carry out his contract to furnish the grantor with a home does not arise from the fact that the grantee, after furnishing the grantor with a home for nearly twenty years, finally evicted him because his habitual intoxication and filthy habits made his presence intolerable to the grantee and his family.

3. SAME—*want of consideration is not ground for setting aside an instrument under seal.* Want of consideration is not, of itself, ground for setting aside an instrument under seal, such as a deed.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN McGOORTY, Judge, presiding.

BRUNDAGE, LANDON & HOLT, (ROBERT N. HOLT, of counsel,) for appellants.

JOHN. E. ERICKSON, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

On June 16, 1884, Spencer S. Chamberlin, the appellee, purchased a lot improved by a dwelling house at No. 23 South Sacramento boulevard, in the city of Chicago. He took possession of the premises and resided thereon with his wife. On January 9, 1890, he deeded the premises to his wife, who died intestate March 27, 1891, leaving surviving her the appellee and Charles H. Sanders, a child by a former marriage. At that time Sanders and his wife,

May A., who are the appellants here, resided in another section of the city of Chicago. On March 31, 1891, appellants conveyed their interest in the property to appellee, and, he, in turn, on September 21, 1891, deeded the same to appellant Charles H. Sanders. On July 19, 1910, appellants conveyed the property to Joseph J. Kamen, who deeded the same to appellant May A. Sanders on July 22, 1910. On April 4, 1891, appellants, with their two young daughters, moved into the property with appellee, and they lived there together as one family, with the exception of several short periods when appellee resided elsewhere, until October 16, 1910, when Charles H. Sanders ejected appellee from the premises and forbade his return. Appellee thereafter filed his bill in the circuit court of Cook county to set aside the deed of September 21, 1891, to Sanders, and the deeds of July 19, 1910, and July 22, 1910, from appellants to Kamen and from Kamen and wife to appellant May A. Sanders, upon the ground that the consideration for the conveyance from appellee to appellant Charles H. Sanders on September 21, 1891, was the promise of said Sanders to support and maintain appellee in comfort in the home of said Sanders for and during the period of his natural life. The cause was referred to the master in chancery, who reported finding the equities with appellee, recommending that the three said deeds of September 21, 1891, July 19, 1910, and July 22, 1910, be set aside, that appellee be re-invested with the title to the premises and that the appellants be decreed to vacate the same. Objections to the master's report were overruled, and upon being renewed before the chancellor as exceptions to the report some were sustained and others overruled, and a decree was entered finding that the deed from appellants to appellee of March 31, 1891, was without consideration and void; that the conveyance from appellee to appellant Charles H. Sanders of September 21, 1891, was made in consideration of a

promise to support and maintain appellee during his natural life; that on October 16, 1910, said Sanders abandoned his agreement and contract to support and maintain appellee; that the deeds from appellants to Kamen and from Kamen and wife to appellant May A. Sanders were without consideration and void, and that the property at the time of the filing of the bill, on January 12, 1911, was worth $2700 and its rental value was $270 per year. All of said deeds were ordered set aside, thus placing appellee in the same position in respect to the property that he occupied at the time of the death of his wife, on March 27, 1891. The decree further finds that the homestead and dower interest of appellee are of the value of $1566.66, and it was ordered that appellant Charles H. Sanders pay to the appellee, annually, from the time of his eviction on October 16, 1910, the sum of $156.66 during the remainder of appellee's lifetime, that being the proportion of the rental value found by the court that the sum of $1566.66 bears to $2700, the full value of the premises. This appeal has been prosecuted to reverse that decree.

There is a sharp conflict in the evidence as to the consideration for the making of the conveyances of March 31, 1891, and September 21, 1891. Appellee testified that the conveyance of March 31, 1891, was purely voluntary and was made without any solicitation on his part and without any discussion of the matter between him and appellants or either of them; that he never discussed the making of the conveyance of September 21, 1891, until the time it was made, and knew nothing of the matter until the appellant Charles H. Sanders presented the deed to him on that date and requested him to execute it; that in reply to such request he asked, "What do you suppose I am going to do for a home?—This is the only home I have got," to which Sanders replied, "This is simply a question of having the property in my name so that any improvements I wish to make I can make, as it will be my property;" that he re-

plied thereto, "But what am I going to do for a home?" that Sanders then said, "That won't change your life any; you will live here just the same as you always have, eat with us at the table, and your washing and mending will be done here just as it always has been and always will be;" that thereupon appellee stated, "Well, under that consideration, then, I am willing to sign the deed; I don't propose to give away everything I have got and then go and hunt a home somewhere else;" that Sanders then replied, "This home will be your home just as long as you live or want to stay here." Appellee testified that Mrs. Sanders was present at that conversation. He is corroborated in reference to the making of the contract by one witness who states that on one occasion thereafter, when Mrs. Sanders was complaining that the habits of appellee were such as to make his presence intolerable in their home, the witness asked her why she submitted to it, and she replied that it was in the contract with appellee that appellants should give him a home with them. On the other hand, appellants both deny that any such conversation occurred or that any such contract was made.

Charles H. Sanders testified that after the death of his mother, in order to carry out her known desires, it was agreed between himself and appellee that the title should be placed in Sanders free from any claim on the part of appellee, and having been advised that the best way to accomplish this was to first put the whole title in appellee, the deed of March 31, 1891, was made as a part of the plan to invest Sanders with the title; that the matter was discussed a time or two between him and appellee prior to September 21, 1891, when the deed to Sanders was made, and that appellee always expressed a willingness to comply with this arrangement by executing such deed. He testified that there was no promise made to maintain or support appellee as a consideration for the making of the deed of September 21, 1891, but that these two conveyances

were made for the sole purpose of carrying out what the parties thereto knew to be the desire of Mrs. Chamberlin. Sanders is corroborated by Joseph J. Kamen, who testified to a conversation he had with appellee just after the deed of September 21 was made.

At the time of the making of the deed to Sanders, in 1891, appellee was forty-nine years of age and in good health, and it is insisted by appellants that this fact should be considered as having a bearing upon the reasonableness of the agreement claimed by appellee to have been made. Although appellee is successfully contradicted in his testimony on other phases of the case, we are unable to say that the finding of the chancellor on the question of the consideration for the deed of September 21, 1891, is so contrary to the weight of the evidence as to be erroneous, and the decree will not be disturbed on that ground.

We are of the opinion, however, that such a fraudulent intent on the part of appellant Charles H. Sanders has not been shown as would warrant a court of equity in rescinding the contract and setting aside the conveyance. A contract of the character relied upon here is rescinded and a deed made in consideration of such contract is set aside only when such facts are shown as will warrant the presumption that the contract was entered into and the deed secured with the fraudulent intent on the part of the one securing the title not to perform the conditions of the contract. (*Frazier* v. *Miller,* 16 Ill. 48; *Oard* v. *Oard,* 59 id. 46; *Stebbins* v. *Petty,* 209 id. 291; *Wood* v. *Leeka,* 262 id. 607.) The testimony in this case does not warrant the presumption that there was any such fraudulent intent on the part of appellant Charles H. Sanders when he entered into the contract with appellee. It does not appear whether appellants, or either of them, knew of the habits of appellee as to sobriety prior to the time of Mrs. Chamberlin's death. It does appear that shortly after the conveyances between them were made and they had begun their home

life together, appellee became drunk frequently and was in the habit of coming to the home of appellants in a drunken condition. Charles H. Sanders testified that prior to the eviction of appellee, in 1910, he had been an inmate of the Washingtonian Home, where he received treatment for the drink habit on five different occasions; that on one occasion he took treatment for that habit at a branch of the Keeley Institute located at a given address in the city of Chicago, and that on another occasion he took the treatment for the drink habit known as the Gold Cure, under the supervision of a physician; that on numerous occasions he became so intoxicated that he could not get home alone; that witness had frequently gone to saloons when sent for and taken him home, and on other occasions certain men (naming them) had brought him home in an intoxicated condition; that on some of these occasions appellee was so intoxicated as to be helpless, and it became necessary for Sanders to undress him and put him to bed; that in 1896, because of some disagreement between appellee and Sanders as to appellee's habits, he left the home of appellants for a period of two weeks; that in 1897 he left for another period of between four and five months for the same reason; that before he was permitted to return on these occasions he promised Sanders that he would quit drinking and give his family no further cause for complaint on that account; that these promises were not kept, and appellee again left his home and remained away until 1899, when he received a serious injury while at work; that this injury has left him a cripple; that after a year spent in the Cook County Hospital and other institutions he asked permission to return to the home of appellants and again renewed his promises to reform; that his crippled condition did not prevent a return to his former mode of life, and he soon resumed the old habit of frequently becoming intoxicated; that as a result of his injury, when drinking he could not control the action of his urine and frequently re-

turned home in a revolting condition; that on one occasion prior to the time of his injury he assaulted Sanders and threatened to kill him, and that his conduct was such upon this occasion that a policeman was called and he was placed under arrest and kept at the police station for two days. In all these matters Sanders is corroborated by the testimony of his wife and his two daughters. It was further disclosed by the testimony of these four members of the family that appellee became negligent in respect to the care of his person and his room to the extent that his clothing and bedding were invariably in a filthy condition after each period of intoxication, and that this condition became so bad that Mrs. Sanders was no longer able to do his washing for him; that on a number of occasions, when drunk, he made indecent exposures of his person to the members of the family, and several times, also when intoxicated, applied vile and profane epithets to Mrs. Sanders and her two daughters. Because of his conduct in this regard Mrs. Sanders and the daughters ceased to speak to him about a year before he was ejected from the home and Charles H. Sanders had not spoken to him for some months prior to that time. It is unnecessary to go further into detail in reference to the habits and conduct of appellee as a member of this household. It is sufficient to say that they were of such a nature as to make his presence intolerable as a member of the family.

Appellee, while admitting that he sometimes drank a little, denied that he was ever drunk to the extent testified to by the members of the Sanders family. He denied that he had been at the Washingtonian Home five times but admitted that he had received treatment there on two occasions and that he had been treated at the branch of the Keeley Institute. While he produced two or three neighbors who had seen him occasionally to testify that they had never observed him drunk, he made no effort to contradict, except by his own testimony, the testimony of Sanders and

the other members of his family that certain men, who were named, had frequently brought him home in a drunken condition. By his own manner of testifying appellee has strengthened the testimony produced on the part of appellants as to his habits and conduct, and it is apparent that the witnesses for appellants have correctly depicted appellee's manner of life as a member of the family. Under these circumstances, and because appellants finally reached the point where they could endure the situation no longer and evicted appellee from their home, it cannot be said that it will be presumed they entered into the contract with him with the fraudulent intent to secure this property without fulfilling their own promises. In contracting to become a member of the family of appellants it devolved upon appellee to demean himself in a proper manner while sustaining such relationship, and he cannot complain if by reason of his own misconduct, resulting from voluntary intoxication, it was no longer possible for appellants to allow him to remain in their home. Appellee by his own acts has forfeited the right to require appellants to maintain him in their home, and the court erred in setting aside the conveyance of September 21, 1891.

No reasons are assigned for setting aside the conveyance of March 31, 1891, except that there was no consideration for it. This is not a sufficient ground for the setting aside of an instrument under seal. *Rendleman* v. *Rendleman,* 156 Ill. 568; *Calkins* v. *Calkins,* 220 id. 111.

The decree of the circuit court is reversed and the cause is remanded, with directions to dismiss the bill for want of equity.          *Reversed and remanded, with directions.*