Warner v. Carter.

---

No. 23,115.

LOU E. WARNER, *Appellant,* v. WILMA M. CARTER, *Appellee,* et al.

SYLLABUS BY THE COURT.

REPLEVIN—*Automobile—Defenses Under General Denial—Evidence of Collusion and Fraud Properly Received—Chattel-mortgage Lien—Instructions—Replevin Affidavit Evidence of Value of Automobile.* The proceedings in an action for replevin of an automobile, in which the defendant recovered the value of the automobile, examined, and *held:*

1. Recital in an instruction to the jury of the contentions made by the defendant under a general denial constituted record evidence that the contentions were made.

2. Under the general denial, evidence that the plaintiff's claim of right to possession of the automobile was made in collusion with another, to defraud the defendant, was properly received.

3. There was evidence on which to base instructions regarding collusion and fraud.

4. Instructions stating conditions under which the defendant's bill of sale would take priority over the plaintiff's mortgage were not open to the criticisms directed against them.

5. The replevin affidavit was properly received in evidence against the plaintiff on the subject of value of the automobile.

Appeal from Jewell district court; CHARLES L. KAGEY, judge *pro tem.* Opinion filed June 11, 1921. Affirmed.

*C. Clyde Myers,* of Mankato, for the appellant.

*A. W. Relihan, T. D. Relihan,* both of Smith Center, *R. W. Turner,* and *D. F. Stanley,* both of Mankato, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one of replevin for an automobile. The defendant, Wilma M. Carter, recovered, and Warner appeals.

In the petition Warner claimed a special interest in the automobile, by virtue of a chattel mortgage dated January 16, 1919, and recorded on January 17. The mortgage was given by J. S. Johnson, to the Motor Bank of Denver, Colo., to secure a note for $550 due March 15. On June 18 Warner bought the note for the balance due, $310, and took an assignment of the mortgage.

The car was a new one, for which Johnson gave another car as part consideration. In the forenoon of January 16 an automobile salesman demonstrated the car to the defendant. Johnson then "closed the deal for the car," and at noon prepared and signed a bill of sale of the car, in the office in Denver in which the defendant worked. The bill of sale was witnessed by two witnesses, and was delivered to the defendant as soon as executed. It recited a valuable consideration, permitted Johnson to use the car on condition he would keep it in repair, and provided he should relinquish his privilege on demand. The instrument was filed for record on June 10. When the bill of sale was delivered to the defendant, she went for a ride in the car with her sister and Johnson. When they returned the defendant went to dinner, and then went riding again during the evening. She kept the car in a garage, for which she paid rent, and she used it without restriction whenever she desired. When she took the bill of sale she had no knowledge of the existence of any chattel mortgage affecting it.

Johnson worked for Warner, at a salary of $150 per month. Warner made loans on chattel security, and Johnson appraised the securities. When Johnson was investigating securities, the defendant made inventories of them for him, and used the car for that purpose. Warner testified he purchased the note and mortgage on a telephone call from the Motor Bank, so Johnson could use the car in doing Warner's business, but he allowed Johnson nothing for providing the car. Warner said he investigated the records before he took up Johnson's note, and found no bill of sale. Warner said Johnson had been using the car in Warner's business, and Warner purchased the car to obtain its use in his business. He said he was buying the note, and did not care who owned the car, and he said he allowed Johnson to use the car with the understanding Warner owned the car and Johnson was to pay interest. Johnson paid

nothing, but no deduction was made from his salary, because, Warner said, he was overdrawn. Johnson was under bond to answer some criminal charge when Warner bought the note.

There came a time when Johnson took the car to a garage other than the defendant's, and refused to allow the defendant to use it. Her home was in Lebanon, Kan. One day she telephoned Johnson to drive the car to the place where she was employed. They then drove to a restaurant and, when Johnson went into the restaurant, she drove the car to Kansas. She was arrested at Lebanon, in Smith county, without a warrant, was taken to Mankato, in Jewell county, and was then released. A few days later she was again arrested at Lebanon, and was again released on telegraphic instructions to the sheriff from Denver. A few days later she was arrested, and was taken to the jail in Mankato, where she spent the night. Johnson was there when she arrived. After a preliminary examination, she was discharged, but when she went to the garage where she had left the car, she was served with Warner's summons in replevin. By direction of Warner, the car was delivered to Johnson. Johnson promptly drove it to Denver, and has ever since had possession of it. Johnson was named as a defendant in the action, but he filed no pleading, and did not appear at the trial, either as party or witness.

In presenting the issues of fact to the jury the court said the defendant, Carter, claimed the automobile as owner by virtue of the bill of sale, asserted the chattel mortgage was neither given nor recorded until she had purchased the automobile and had taken possession of it, asserted that Warner and Johnson had fraudulently colluded and conspired to deprive her of her property, and asserted that Warner was not in fact owner and holder of the chattel mortgage, but purchased it on behalf of Johnson. The usual necessary instructions on the subject of collusion and fraud were given. Warner says the record discloses no contention of collusion and fraud made by the defendant, Carter. The instruction referred to is record evidence of the contention. The court's information may have been derived from the opening statement of counsel to the jury, or from statements of counsel made during progress of the trial, or at the close of the evidence, or by informal

request for instructions. There is nothing in the record to contradict the court's statement, and the statement, being a portion of the record, is presumed to be true.

It is said the issue of fraud could not be raised without pleading it. The action was replevin, the answer was a general denial, and the court has said time and again that under a general denial in replevin a defendant may prove any fact which will defeat the plaintiff's cause of action. In the case of *Holmberg v. Dean*, 21 Kan. 73, the rule was applied to proof that the plaintiff's title was fraudulent. In the case of *Kerwood v. Ayres*, 59 Kan. 343, 53 Pac. 134, general denial in an action for conversion was placed on the same footing with general denial in replevin, and it was said the plaintiff's title might be impeached for fraud.

It is said there was no evidence of collusion and fraud. It is not likely that Warner purchased a dishonored note merely on telephone call by a bank and without consultation with Johnson. It is not likely that Warner searched the record for adverse claims upon the automobile and failed to find Carter's bill of sale, which had been on record since June 10. Warner testified he purchased the car. Then he testified he purchased the note, and was not interested in who owned the car. He testified he purchased the note and mortgage so Johnson might use the car in Warner's business, and then he testified he owned the car, but Johnson was to pay interest on the sum Warner paid for the car. When the car was taken by the sheriff from Carter, it was turned over to Johnson, by direction of Warner, and Johnson has had it ever since. This shuffling, considered in connection with the relations between Warner and Johnson, the sandbagging of the woman with repeated arrests, and Johnson's keeping away from the trial, indicated some collusion between Warner and Johnson.

Defendant Carter's right to recovery was submitted to the jury in the following instruction:

"3. If you should find from the evidence that the property in controversy was sold and transferred by the defendant, J. S. Johnson, to defendant Carter, and that said automobile was delivered to her prior to the execution of the mortgage upon which plaintiff bases his claim, and prior to the recording of said mortgage, and that the defendant, Wilma M. Carter, had no knowledge or notice of the existence of such mortgage at the time she took said car, then the claim of the plaintiff under said mortgage would be void as against the defendant, Wilma M. Carter,

and in such event your verdict should be for the defendant, Wilma M. Carter."

The instruction is criticised because the court did not use the words "sale in good faith for a valuable consideration." The bill of sale recited a valuable consideration, and by statute imported a consideration (Gen. Stat. 1915, § 2040), which Warner did not offer to contest. The sale and delivery referred to clearly meant actual and not colorable sale and delivery, and the jury must have so understood the instruction. Actual purchase and possession for a valuable consideration before execution of the mortgage, and without knowledge or notice of the mortgage, gave good title as against the mortgage. A subsequent instruction related to procuring title before record of the mortgage. It is said the court did not define procurement of title, and the subject of actual and continued change of possession was not mentioned. The instruction is to be read with instruction No. 3, and when this is done the meaning is clear. Indeed, the instruction was in effect instruction No. 3, with purchase before execution of the mortgage omitted, and consequently reference to continued possession was not necessary.

Complaint is made, that the replevin affidavit filed on behalf of Warner was introduced to prove value of the automobile. The complaint is made on the authority of *Edwards v. Bricker,* 66 Kan. 241, 71 Pac. 587. In that case the action was against a surety on the replevin bond and, as the opinion points out, the plaintiff in the replevin action was not a party. Here we have the plaintiff's own valuation of the automobile, stated under oath, and so stated to enable him to obtain possession of the property. Clearly, as against him, the affidavit constituted an admission of value. Other complaints are made respecting proof of value, but there is no contention the verdict of the jury is too large, and the court would not be authorized to award a new trial to revalue the car.

There are ten divisions of the plaintiff's brief, some of which embrace several subdivisions. The court has considered them all. The foregoing covers the subjects of chief importance, and assignments of error not discussed are not deemed to be of sufficient merit to require a reversal.

The judgment of the district court is affirmed.