No. 24,299.

CLAUDE GERARD, *Appellant,* v. VADNA M. COSTIN and MARGARETT
E. COSTIN, *Appellees.*

SYLLABUS BY THE COURT.

1. DEED—*Action to Set Aside—Obtained by Alleged Fraud—Burden of Proof.*
In an action to set aside a deed obtained by fraud, the burden of proving
the fraud ordinarily rests on the plaintiff who asserts it.

2. SAME—*Insufficient Evidence to Show Want of Consideration for a Deed.*
Want of consideration for a deed regularly executed is not established
where the trial court, in the exercise of its judgment, disbelieves the plain-
tiff's evidence touching the alleged fraudulent consideration, nor because
the trial court wholly disbelieves the defendant's testimony as to a monetary
consideration paid for it, nor because the trial court makes a finding of fact
as to the nature of the consideration which has no evidence to support it.
The deed continues to stand because of the undisclosed but yet existent
consideration which the statute imports.

3. SAME—*Action to Set Aside—Fiduciary Relation of Parties.* The doctrine
of fiduciary relationships cannot be extended as a mere matter of law to
include the relationship existing between an elderly suitor and a woman
whom he for a long time persistently but unsuccessfully sought to marry, so
as to cast the burden on the woman to show that a conveyance of property
made by him to her was his free and independent act and not the con-
strained result of the relationship existing between the parties.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK,
judge. Opinion filed June 9, 1923. Affirmed.

*E. L. Foulke,* and *James B. Nash,* both of Wichita, for the appellant.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita,
for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to set aside a deed to certain
Wichita property on the ground that it had been obtained through
fraud of defendant grantee practiced on plaintiff grantor, a man of
78 years. The principal fraud alleged was defendant's promise to
marry the plaintiff without any intention of doing so, whereby he
was induced to convey the property to her.

Defendant's answer contained a general denial, a denial that she
ever promised to marry plaintiff, and she alleged that at all times
since August 8, 1914 and prior to February 11, 1916 she was the
owner of the property. By amendment, defendant pleaded at length

the facts of other litigation between the same parties in Colorado concerning other properties acquired by defendant from plaintiff and the judgments thereon in her favor.

The issues were tried by the court. The evidence in plaintiff's behalf tended to support his cause of action. The evidence for the defendant was generally to the contrary, but defendant herself gave this notable testimony:

"He [plaintiff] stated, in part, 'If you want the property here in Wichita I am going to sell it to you cheap.' It was just a little while and then he drove up there to town and proved it up, and I says, 'I am going to fix this property so that there won't be so much fussing about it'; and he says, 'and if you want it, I will sell it to you cheap.'

"Q. What did you tell him? A. I says, 'Well, I would like to have it of course.' I says, 'I will buy it of you, but you know how it is,' I says, 'I haven't got thirty-five hundred—twenty-five hundred dollars'; I says, 'I will give you twenty-two hundred dollars for this property, for the piece of property.' He says, 'Well, alright, you can have it.'

"Q. All right, go ahead; was this this morning he was going to go and file? A. He says, 'If you want that property, will fix—I will fix it up for you to-day.' I was one of his main witnesses when he proved up his homestead.

"Q. That was along the eighth day of August, 1914? A. August, 1914.

"Q. How did you pay him the twenty-two hundred dollars? A. I paid him cash money for it. I gave him five hundred dollars that morning before he left, and I gave him the other in a day or two, after he came home. It was cash money that I had on hand."

The trial court made findings of fact, which in part, read:

"1. The plaintiff, Claude Gerard, at the time of the execution of the deed involved in this controversy, was seventy-eight (78) years of age and subject to the infirmities of mind and body usually attendant upon a man of such years whose life has been spent in useful toil. Vada M. Costin was in her forties.

"2. Prior to 1909 he was a farmer residing in the state of Pennsylvania. In the spring of 1908 he came to Kansas and met defendant Vadna M. Costin at the home of herself and her mother, Eliza Baker, since deceased, in El Dorado, Kansas. After a short visit with them he returned to Pennsylvania with the intention of coming back to Kansas. When he left, he asked defendant Vadna M. Costin to marry him but she did not consent.

"3. In April, 1909, plaintiff returned to Kansas and from that time on up until January, 1910, resided in the home of defendant Vadna M. Costin a considerable portion of the time. . . .

"4. Prior to the 8th day of August 1914, plaintiff purchased the real estate in question. . . .

"6. The property in question was deeded by plaintiff to defendant Vadna M. Costin as a gift and the only consideration supporting same was the love and affection borne by plaintiff for defendant Vadna M. Costin. Plaintiff also entertained the belief that the gift might aid his suit.

Gerard v. Costin.

"7. During the time of the acquaintanceship of plaintiff and defendant Vadna M. Costin, marriage was often contemplated and discussed between them, and plaintiff often requested and urged her to marry him and plaintiff cherished the fond hope and belief that he would ultimately be able to persuade her to enter into the marriage relation with him.

"8. The relations of the parties were most friendly and cordial and defendant Vadna M. Costin and her daughter took excellent care of plaintiff. . . . Defendant Vadna M. Costin cherished an affectionate regard for the old gentleman and executed no undue influence over him. . . .

"11. Defendant Vadna M. Costin considered the matter of marrying plaintiff but at no time formed or expressed an intention to marry him.

"12. The findings in relation to the dealings between the parties are made with some hesitation but represent the court's best judgment on the testimony introduced. The court finds generally that the burden of proof as to the allegations in the petition was not sustained and that such failure in and of itself is fatal to plaintiff's recovery."

Judgment was entered for defendant, and plaintiff appeals.

It will be observed that the trial court gave no credence to plaintiff's evidence that the conveyance was made pursuant to any promise of defendant to marry the plaintiff, and found that no such promise was made. On the other hand, the trial court found that defendant did not pay $2,200 or any other sum for the property as testified to by defendant. It also found that the deed was a gift, the only consideration being the love and affection borne by plaintiff for defendant.

The appellant contends, and we think correctly, that there was no evidence to support this finding. There was plenty of evidence to prove the love and affection of plaintiff for defendant, but none that we can discern that he conveyed the property to her on that account. This curious result devolops: The consideration alleged by plaintiff was not proved; the consideration testified to by defendant was not true; and the consideration found by the trial court was not sustained by evidence. Where does that leave the case? It presents a situation where the court might be tempted to adopt the advice of Bassanio, "to do a great right, do a little wrong" (*Harris v. Drenning*, 101 Kan. 711, 719, 168 Pac. 1106), but the principles of appellate procedure forbid. The situation is simply this: The facts as to the consideration were not established, but neither was it established that there was a total want of consideration; and consequently the deed cannot be set aside.

It is urged for appellant that if the deed was a gift as found by the trial court, it should be set aside; and some authority is cited

for the proposition that except between near relatives gift conveyances cannot stand on a mere consideration of love and affection. There is, however, ample authority to the contrary. (18 C. J. 162 *et seq.*) But deeds solemnly executed import a consideration, and until successfully assailed the legal consideration therein recited stands as true between the original parties. (Gen. Stat. 1915, § 2040; *Ruth and King v. Ford,* 9 Kan. 17, syl. ¶ 2; *Hoover v. Hoover's Estate,* 104 Kan. 635, 638, 180 Pac. 275; *Warner v. Carter,* 109 Kan. 285, 289, 198 Pac. 960; *Stern v. Deutsch,* 9 Kan. App. 218, 220, 59 Pac. 687; see, also, *Lavelle v. Lavelle,* 164 Iowa 99; *Chamberlin v. Sanders,* 268 Ill. 41; *Battle et al. v. Claiborne,* 133 Tenn. 286; 18 C. J. 161-165.)

Here no competent and accredited evidence has been forthcoming to impeach it. It would be a questionable doctrine to expand the rule of fiduciary relationships so as to declare that when a woman is wooed by an elderly suitor, and receives from him a conveyance of property but rejects his solicitations and offers of marriage, she has the burden of showing she did not take advantage of his age and situation and that the conveyance was voluntary and without constraint and that the donor was of sound mind and knew what he was about. (*Golder v. Golder,* 102 Kan. 486, 170 Pac. 803.)

The other matters urged upon our attention have all been carefully considered. Neither of these nor any principle of law which the court has been able to discover on its own initiative, although we have diligently sought for it, will permit a disturbance of the judgment. It is therefore affirmed.

JOHNSTON, C. J., HARVEY and HOPKINS, J. J. dissenting.