No. 33,261

LILLIE L. CHISHOLM; *Appellant,* v. D. L. SNIDER et al., *Appellees.*

(66 P. 2d 606)

Opinion filed April 10, 1937.

*Robert R. Hasty,* of Wichita, for the appellant.

*Rubert G. Martin,* of Lyons, and *R. C. Russell,* of Great Bend, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The plaintiff in this action was the owner of a certain quarter section of land in Rice county and she commenced this action against a number of defendants to quiet her title to such land. It is stated in the petition that the land had been leased for oil and gas and the lessee had initial production and would probably continue. Two of the defendants filed disclaimers and three filed separate answers and cross petitions which, in addition to a general denial, alleged that on March 1, 1934, they had purchased an undivided specific interest in and to all the oil and gas lying in and under, or that may be produced from the land described, for the term of fifteen years from November 25, 1931, and as long thereafter as oil or gas may be produced therefrom; that the deeds conveying such interest were duly executed, acknowledged and delivered by the grantor to these individual defendants and were thereafter duly filed for record in the office of the register of deeds of Rice county on the 5th day of March, 1934, and recorded in a certain book and at a certain page of the records of that office, and each of the three defendants further pleaded:

"That at the time this defendant acquired the above-described interest in said oil, gas and other minerals he relied upon the records in the office of the register of deeds of Rice county, Kansas, and upon the representations of general warranty and valuable consideration contained in conveyance and of record by which the plaintiff herein conveyed said mineral interest to one Clyde Barker, who in turn, with his wife, made conveyance thereof to the Bar-Key Petroleum & Royalties Company; that the plaintiff is thereby estopped to deny this defendant's title; that this defendant paid value, i. e., money, for said mineral interest in good faith and without any notice, knowledge or information of any infirmities whatsoever in and to the right, title and interest of this defendant's grantors, either immediate or remote, to so convey said interest to this defendant."

The answers concluded with the prayer that the plaintiff take nothing and the defendant be discharged without cost.

Each of these three defendants in a cross petition repleaded all the allegations of their answer, set out their undivided interest in and to the oil and gas on said premises, and alleged that the claim of the plaintiff in and to such undivided interest owned by these defendants separately, insofar as it purports to affect the same, constitutes a cloud upon their title which they are separately entitled to have removed and their separate title quieted against the plaintiff.

The plaintiff replied first with a general denial, and further denied that the defendants, Snider, Elder and Gill, paid value, that is, money, for said mineral interests in good faith and without any notice or information of any infirmities in and to the right, title and interest of the defendants' grantors, either immediate or remote, to so convey said interest to these defendants, and further alleged that these defendants were fully aware of all of the facts herein alleged. That neither she nor her cosigner of the instrument claimed by defendants as their source of title ever signed, executed or delivered to Clyde Barker any instrument in writing of any kind or character purporting to convey an interest in the property in question or with intention of giving a legal effect thereto or of transferring or setting over any interest of any kind or character as referred to in the instrument mentioned in the answer of defendants as being of record. Said instrument was and is therefore void, and of no force and effect, and was not entitled to be filed of record; that plaintiff did not discover until the latter part of 1935 that said instrument was of record. That said instrument and all subsequent instruments thereto by which defendants claim title constituted a cloud on her title and are void and should be set aside and discharged of record and the defendants barred from claiming any title thereunder. That Clyde Barker and the Bar-Key Petroleum and Royalties Company are liable to plaintiff and the other defendants herein notwithstanding their disclaimer. The reply further states that plaintiff and her cosigner, now deceased, were both aged and blind on December 10, 1931. The reply concludes with the prayer that all these instruments be set aside and discharged of record as void and the defendants barred from claiming any right, title or interest in and to the property described in the plaintiff's petition.

A jury was waived and the case was tried by the court. The court held the burden of proof was upon the defendants. The defendants called the notary public who took the acknowledgment of the plaintiff and her cosigner, Mary A. Graham, to the two royalty deeds signed by them on December 10, 1931. He said he saw both of them sign these deeds. He asked them if they understood the instruments they were signing, and they said, "Yes," that the young man, Doyle Barker, who went to the plaintiff's house with him, had already explained them to them. He took his notary seal with him, and after he had put his seal on the deeds he handed them to the young man and the young man paid him his notary fee.

Four other deeds were introduced by agreement, two being from Clyde Barker and wife to the Bar-Key Petroleum and Royalties Company, one for one-sixteenth interest in the oil and gas on the west half of the quarter section, and the other on the east half thereof, both executed December 10, 1931, and recorded the same day; a third deed from the Petroleum and Royalties Company to D. L. Snider for the one-sixteenth interest, executed March 1, 1934, and recorded March 5, 1934; and the fourth deed from Snider and wife to defendant Elder for a one-fortieth interest, executed March 5, 1934, and recorded March 10, 1934. The deed to Gill is not set out in the abstract, but in the argument it is treated as being issued to him at the same time as the one to Elder. The record also shows that the original deed from the plaintiff and her cosigner to Clyde Barker was recorded the same day it was signed and acknowledged, December 10, 1931. All the deeds state a consideration of one dollar.

The demurrer of the plaintiff to the evidence of the defendant was overruled.

The plaintiff testified in her own behalf, the substance of which testimony was that she and her cosigner in this transaction, who was her foster mother, lived together. They were both blind and aged, one 94 and the other 62, at the time the deed in question was signed. They had arranged with Doyle Barker to convey to the Bar-Key Petroleum and Royalties Company a one-sixteenth interest in the oil and gas on a quarter section of land, to be made in two deeds, one on the east half and the other on the west half, and they did execute such deeds on November 25, 1931, but they were on land incorrectly described and the deeds of December 10, 1931, were to correct that mistake. On November 25, 1931, Doyle Barker gave her a statement in the form of an agreement to deliver one hundred shares of stock in the Bar-Key Petroleum and Royalties Company which was supposed to be worth $10 per share, or $1,000. She said when Doyle Barker read the deeds to her and her cosigner on December 10, he read the name of the Bar-Key Petroleum and Royalties Company as the grantee and did not read the name of Clyde Barker, his father, as the deeds now show. She understood and thought the notary was to take the deeds to the bank and leave them there until she got the stock. She never did get the stock and never got any pay for the execution of these deeds. She introduced as an exhibit a letter dated June 21, 1933, signed by Clyde Barker, president, telling her that she would soon receive the shares of stock.

She never knew that the name of Clyde Barker was in the deeds they had signed or that they were put of record until September or October, 1935, when her attorney told her, after looking the matter up. She did not intend to pass title to anybody in the instruments of December 10. She had dealt with the Barkers in other matters and she had been looking after her own interests and those of her foster mother with reference to oil and gas previously.

The plaintiff herself was the only witness called in her behalf. At the close of her testimony the defendants demurred thereto, but the journal entry does not show the ruling thereon unless it was included in the general finding and judgment in favor of the defendants and against the plaintiff, from which the plaintiff appealed after the overruling of the motion for a new trial.

Appellant arranges her argument as to error in the judgment along the line of the three reasons given in the journal entry for the decision as made by the trial court, pointing out the failure of evidence to establish some of them, and in other instances the omission of specific allegations for such conclusion. A general ruling may sometimes be correct, although some of the reasons given in support of it may not be literally applicable or correct.

We shall first consider the second ground or reason stated in the journal entry for the ruling, which is as follows:

". . . that when the plaintiff herein signed the instruments same became an invitation to the public to purchase the same, and the defendants herein are innocent purchasers and relied upon the record title and are therefore protected. . . ."

Appellant strongly urges under this heading there was absolutely no evidence of the defendants being innocent purchasers, relying upon the record title and properly connecting therewith the want of proof of consideration, calling attention to the allegations of the reply which denied the matter of defendants being innocent purchasers and paying a valuable consideration.

Appellant cites *Morris v. Wicks*, 81 Kan. 790, 106 Pac. 1048; *Grocer Co. v. Alleman*, 81 Kan. 543, 106 Pac. 297; and *Edwards v. Myers*, 127 Kan. 221, 273 Pac. 468. All three of these cases were where the deed in question was issued by one who had previously executed a deed to another party who had failed to record it. It was held in the first case:

"In order for the grantee in a quitclaim deed to take advantage of the statute requiring conveyances of real estate to be recorded, and thereby to

defeat the title held under an earlier unrecorded deed executed by the same grantor, he must have paid a valuable consideration therefor, and the payment of a merely nominal amount will not meet this requirement." (Syl.)

In this case the court said in the opinion that the quitclaim deed was made gratuitously. The purchaser testified that he gave only one. dollar for the deed and talked to the former owner about the record still showing the property in his name. The defendant, therefore, was plainly not an innocent purchaser, and gave only a nominal consideration.

In the Alleman case the second purchaser was the wife of the first purchaser, and the only consideration was an antecedent indebtedness. She paid nothing to the record owner for her deed, and therefore was not entitled to the statutory benefit of an innocent purchaser for value.

. The Myers case was between a sister and brother, each of whom received deeds from their father to portions of his land which provided that they should not be recorded until the death of the father. After executing and delivering these deeds the father gave the brother a deed to a strip of land across the sister's land which was used as a driveway. There was evidence that tended to show there was no consideration paid for this subsequent deed to the son, and it was held that—

"R. S. 67-223 is for the protection of a purchaser of real property for a valuable consideration without actual notice of an outstanding unrecorded conveyance." (Syl. ¶ 1.)

The case at bar did not involve the execution of a second deed by the same grantor where the first deed had not been recorded, nor was the matter involved between members of the family, and there was evidence in each of the three cases above cited as to want of consideration. In the case at bar there was no evidence whatever of want of consideration except for the deed made by plaintiff and her cosigner. The sections of the statute referred to in the three cases above cited as to the effect of the record on an innocent purchaser for value are as follows:

"Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of. deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice.

"No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record." (G. S. 1935, 67-222, 67-223.)

As to a deed or other contract importing a consideration G. S. 1935, 16-107, states:

"All contracts in writing, signed by the party bound thereby, or his authorized agent or attorney, shall import a consideration."

And as to proof of want of consideration, G. S. 1935, 16-108, is as follows:

"The want or failure in the whole or in part, of the consideration of a written contract, may be shown as a defense, total or partial, as the case may be, in an action on such contract, brought by one who is not an innocent holder in good faith."

Under these statutes the deeds of these defendants imported a consideration without the introduction of any evidence, and the duty and burden was upon the plaintiff to introduce evidence to show the want of consideration.

In *Drake v. Seck, Adm'x*, 116 Kan. 717, 229 Pac. 67, it was said:

"Want of consideration is not a mere burdenshifter, but is an affirmative defense (R. S. 16-108), which must be established by a preponderance of the evidence in order to defeat recovery. (*Fuller v. Scott*, 8 Kan. 25.) The presumption of consideration is not a presumption of law; it is a presumption of fact. It extends to any fact which, under the situation and circumstances of the parties, might reasonably supply a consideration, and it cannot be overthrown except by proof of facts warranting the inference of no consideration of any kind." (p. 718.)

It was held concerning the consideration of a deed as follows in *Gerard v. Costin*, 113 Kan. 617, 215 Pac. 1011:

"Want of consideration for a deed regularly executed is not established where the trial court, in the exercise of its judgment, disbelieves the plaintiff's evidence touching the alleged fraudulent consideration, nor because the trial court wholly disbelieves the defendant's testimony as to a monetary consideration paid for it, nor because the trial court makes a finding of fact as to the nature of the consideration which has no evidence to support it. The deed continues to stand because of the undisclosed but yet existent consideration which the statute imports." (Syl. ¶2.)

In the case of *Comfort v. Lynch*, 118 Kan. 40, 233 Pac. 1042, it is stated:

"Being in writing, there is a rebuttable presumption that there was a consideration for the grant. (R. S. 16-107.) We find no evidence tending to contradict this presumption, and the existence of a consideration must therefore be treated as established, so that the claim of a want of mutuality fails." (p. 42.) (See, also, in this connection, *Fidelity State and Savings Bank v. Franz*, 128 Kan. 500, 278 Pac. 718; and *Boner v. Texas Co.*, 143 Kan. 746, 57 P. 2d 420.)

The defendants, as purchasers, relying on the record under the sections of the statute above quoted, were innocent purchasers, even if there was something wrong about the first deed. There was nothing wrong with it as it appeared of record, and there was no evidence of these defendants having any knowledge or notice of there being anything wrong with the first conveyance to Barker. Besides, the first two deeds had been of record more than two years before they made their purchases, and nothing was done to give notice to innocent purchasers that there was a question about the first deed. It is said in 23 R. C. L. 197 that—

"A person, in dealing with another in respect to real estate, may rely on the record title to the property, in the absence of actual knowledge of the title in fact, or of facts sufficient to put him on inquiry in respect thereto."

We conclude that the second reason assigned by the trial court for the ruling in favor of the defendants as innocent purchasers and for a consideration was correct under all the evidence adduced upon the trial, and this reason was all sufficient for the decision of the case under the pleadings and evidence. It is therefore unnecessary to consider the other two reasons assigned, because even if the position taken by the appellant as to them should be sustained, it would at most only eliminate them as reasons and leave the second reason given as sufficient to fully determine the issues involved.

The judgment is affirmed.